Argued and submitted February 10, 2015, affirmed March 16, 2016

Brenda ROBINSON,
*Plaintiff-Appellant,*

*v.*

TRI-COUNTY METROPOLITAN
TRANSPORTATION DISTRICT OF OREGON,
a municipal corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
130913689; A156910

370 P3d 864

Willard E. Merkel argued the cause for appellant. With him on the briefs was Merkel & Associates.

Erik Van Hagen argued the cause and filed the brief for respondent.

Before Ortega, Presiding Judge, and DeVore, Judge, and Garrett, Judge.

DEVORE, J.

**DEVORE, J.**

This case requires that we revisit the insurer's exemption under ORS 742.061(3) from the insured's attorney fees when the insured has rejected the insurer's timely offer to arbitrate the claim. Plaintiff appeals a judgment awarding her uninsured motorist benefits but denying her recovery of attorney fees. The trial court denied her recovery of fees because it concluded that, under ORS 742.061(3), defendant Tri-County Metropolitan Transportation District (Tri-Met) satisfied the exemption from plaintiff's attorney fees, which is available when, in writing, an insurer accepts coverage, offers to arbitrate, and agrees that the only issues would be the fault of the uninsured motorist and damages due.

Plaintiff assigns error to the denial, making several arguments. She argues that Tri-Met's letter, which offered to arbitrate, was defective in describing what could be arbitrated. She argues that Tri-Met's fourth affirmative defense, potentially offsetting damages with payments from collateral sources, and Tri-Met's discovery responses, which failed to admit that *some* damages were due, impermissibly reserved the possibility that no damages might be awarded. She contends that, merely by having referred to any matter other than the extent of damages, Tri-Met has impermissibly interposed an added issue, regardless whether the matter was actually disputed. Finally, she argues that Tri-Met's fifth affirmative defense, alleging a failure to state a claim involving Tri-Met's negligence, impermissibly denied all damages. We review rulings on an entitlement to attorney fees for legal error, *Williamson v. Government Employees Ins. Co.*, 247 Or App 48, 53, 270 P3d 260 (2011), *rev den*, 352 Or 25 (2012), and we affirm.

## I. FACTS

Plaintiff was a passenger on a bus operated by defendant Tri-Met. The bus stopped suddenly or made an evasive maneuver to avoid a collision with a negligent motorist. Plaintiff was thrown within the bus and injured. Because her injuries occurred without a collision of the vehicles and the negligent driver was unknown, she was the victim of a so-called "phantom vehicle," which qualifies as an

uninsured motor vehicle. ORS 742.504(2)(g).[1] Tri-Met, as a self-insurer, provided its passengers uninsured motorist (UM) benefits under the same terms as would a motor vehicle insurer. ORS 278.215(2).[2] Plaintiff gave proof of loss to Tri-Met for UM benefits.

Within six months, Tri-Met responded to plaintiff's attorney with a letter that offered to arbitrate and that limited the issues to determination of the damages due her. Typically dubbed a "safe harbor" letter, the letter represented Tri-Met's effort to avoid exposure to a court's judgment requiring it to pay plaintiff's attorney fees. In part, the letter read:

> "Pursuant to ORS 742.061(3) please note with respect to this case and plaintiff's claim for uninsured motorist coverage:
>
> **"TriMet has accepted coverage and the only issue is the damage due the insured. TriMet consents to submit this case to binding arbitration."**

(Boldface in original.) Plaintiff chose instead to file this action in court, preferring to avoid binding arbitration, to preserve the right to appeal, or to preserve the prospect of recovering attorney fees in a court proceeding if Tri-Met's offer to arbitrate might be proven to be ineffective.

Plaintiff's complaint was referred to nonbinding, court-annexed arbitration.[3] ORS 36.400(3) (providing for nonbinding arbitration of claims under $50,000). She alleged that the accident was caused by an uninsured vehicle (*i.e.*, the phantom vehicle), but she also alleged that the

---

[1] For purposes of uninsured motorist benefits, a vehicle is defined as a "phantom vehicle" when the offending vehicle makes no physical contact with the insured or the vehicle she occupies. ORS 742.504(2)(g).

[2] Under ORS 278.215(2),

"[a]ny local public body, as defined in ORS 30.260, which establishes a self-insurance program under ORS 30.282 for or on account of the operation of motor vehicles within the local public body's control, shall provide the uninsured motorist coverage required under ORS 742.500 to 742.504 and may provide the personal injury protection benefits required under ORS 742.518 to 742.542."

[3] As a judicial proceeding, plaintiff's attorney fees may still be recoverable under ORS 742.061 in court-annexed arbitration. *Douglass v. Allstate Ins. Co.*, 152 Or App 216, 219, 953 P2d 770, *rev den*, 327 Or 305 (1998).

"maneuvering of the bus and panic braking of the operator" caused her to be injured and that "as the result of the negligence of [Tri-Met,]" she had medical expenses of $8,395. She alleged noneconomic damages of $16,605, the apparent remaining balance of Tri-Met's UM benefit limit.

In its answer to the complaint, Tri-Met reiterated the terms of its "safe harbor" letter, admitting:

> "TriMet has accepted uninsured motorist coverage and the only remaining issue is the damages due to plaintiff. TriMet denies [the] nature and extent of plaintiff's injuries."

The statement appeared twice in the answer, both in its initial admissions and again later among its affirmative defenses.

In its first affirmative defense, Tri-Met alleged that its UM benefits were "limited to $25,000."[4] In its fourth affirmative defense, Tri-Met alleged that the final determination of benefits due to plaintiff required consideration of other payments of her damages that she had already received from other sources. Tri-Met alleged:

> "The uninsured motorist benefits provided by TriMet is excess over any other collateral benefits to which plaintiff may be entitled, including but not limited to other uninsured motorist coverage, insurance benefits, governmental benefits or gratuitous benefits."

A fifth affirmative defense responded to the complaint's allegation of the bus driver's "panic" reaction and Tri-Met's own negligence. Tri-Met alleged:

> "To the extent that plaintiff's complaint alleges a claim of negligence by TriMet (as opposed to uninsured motorist benefits), plaintiff's complaint fails to state a claim upon which relief may be granted."

The prayer concluded with the customary language asking for judgment in defendant's favor.

In discovery, plaintiff requested admissions, among other things, that she was injured, that she had at least some

---

[4] Plaintiff has not alleged that, by asserting the limits of its benefits, Tri-Met effectively denied coverage or interposed an issue that would be improper under ORS 742.061(3).

damages, that her medical care was reasonable, and that she was entitled to UM benefits. Tri-Met responded variously as recounted below, but, in all, Tri-Met's responses were short of admissions or denials. As part of those responses, Tri-Met reiterated 10 times that it had accepted coverage and that the only issue was the damages due the plaintiff.

The court-annexed arbitrator awarded $4,963 in economic damages and $8,000 in noneconomic damages but denied attorney fees. Plaintiff contested the denial on appeal to the circuit court under ORS 36.425(6).[5] The court concluded that Tri-Met's "safe harbor" letter was effective, that the affirmative defenses and prayer were not inconsistent with conditions for a "safe harbor," and that the responses to requests for admissions did not raise impermissible issues.

On appeal, plaintiff asserts (1) that Tri-Met's "safe harbor" letter was faulty; (2) that, by leaving open the possibility of a "zero recovery," Tri-Met was impermissibly interposing an issue other than the extent of damages; (3) that, merely by referring to any other consideration, Tri-Met had impermissibly "raised" an issue other than damages, regardless whether the consideration was actually disputed; and (4) that, by alleging plaintiff had failed to state a claim for Tri-Met's negligence, Tri-Met had again impermissibly threatened a "zero recovery." We will take each argument in turn, but we begin by locating the "safe harbor" within its statutory setting.

## II. STATUTES

Although an insured has no entitlement to attorney fees simply for prevailing against an insurer, an insured is entitled to recover attorney fees when circumstances coalesce as described in ORS 742.061(1).[6] Under that subsection, an insured may recover attorney fees if an insured makes a proof of loss, if settlement is not achieved within six months of the proof of loss, and if the insured recovers

---

[5] Under ORS 36.425(6), parties who do not choose a trial *de novo* after court-annexed arbitration may seek review in circuit court of the legal grounds upon which an arbitrator has granted or denied attorney fees.

[6] In this respect, ORS 742.061 is unlike an ordinary attorney-fee clause for a prevailing party. *See, e.g.*, ORS 659A.885(1) (prevailing plaintiff's recovery under discrimination statutes).

more in court than the insurer had offered in settlement. Subsection (1) provides, in part:

> "Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

Motor vehicle insurers are exempted from exposure to an insured's attorney fees under conditions described in ORS 742.061(2) and (3). Insurers may avoid owing attorney fees in claims involving personal injury protection (PIP) benefits or in claims involving uninsured (UM) and underinsured motorist (UIM) benefits when, within six months of proof of loss, they offer binding arbitration and agree that the disputed issues are limited, according to the nature of those benefits.[7] This exemption provides:

> "(2)  Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a)  The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and

> "(b)  The insurer has consented to submit the case to binding arbitration.

> "(3)  Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

> "(a)  The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

---

[7] Both PIP and UM or UIM benefits consider the extent of benefits or damages, but they differ as to consideration of fault. PIP is no-fault coverage for wage loss and medical bills, ORS 742.524, whereas UM and UIM is coverage dependent on the fault of the uninsured or underinsured motorist, ORS 742.504(1)(a). The "safe harbor" terms of ORS 742.061(2) and (3) correspond.

"(b) The insurer has consented to submit the case to binding arbitration."

ORS 742.061(2), (3). With these terms, the legislative purposes are balanced and self-evident. Insurers are encouraged to forgo coverage defenses, while insureds are encouraged to resolve claims expeditiously and economically in arbitration. When an insured chooses litigation over arbitration, the insured is ineligible to recover attorney fees even when prevailing.

## III. ARGUMENTS

### A. *The "Safe Harbor" Letter—Edited But Effective*

Plaintiff contends that Tri-Met's "safe harbor" letter was ineffective because it failed to mimic the statutory terms in every detail. The letter conceded coverage, offered to arbitrate, and agreed that the only issue to be disputed would be damages, but the letter failed to mention any dispute about liability. It failed to repeat the statutory language that "the only issues are *the liability of the uninsured or underinsured motorist* and the damages due the insured." *See* ORS 742.061(3)(a) (emphasis added).

The answer to the argument is not new: Although the statute permits a UM/UIM insurer to reserve for dispute both fault and damages, the statute does not require the insurer to dispute the fault of the offending driver in order to qualify for the exemption from attorney fees. An argument like plaintiff's failed in *Zimmerman v. Allstate Property and Casualty Ins.*, 354 Or 271, 311 P3d 497 (2013). In that case, the insurer sent a "safe harbor" letter appropriately limiting the issues to fault and damages, but the insurer thereafter conceded fault and, at trial, disputed only damages. *Id.* at 273. The claimant argued that, because the insurer conceded the fault of the underinsured motorist, the insurer no longer satisfied the terms of ORS 742.061(3)(a) involving *two*, arguably required, issues. The Supreme Court was unpersuaded. It responded:

"The statute, however, does not by its terms specify that, once an insurer has acknowledged that the only remaining issues are liability and damages, an insurer is thereafter foreclosed from conceding liability if it wants to avoid

paying attorney fees under ORS 742.061(1), and we are loath to read such a requirement into the statute. ORS 174.010 * * *. As the trial court correctly observed, such a reading of the statute 'makes no sense,' particularly in the light of the obvious purpose of the statute to provide an incentive for insurers to settle claims."

*Id.* at 293. The court reversed the judgment awarding attorney fees.

This case is not substantially different. In its "safe harbor" letter, Tri-Met conceded at the outset the liability of the uninsured motorist, reporting to plaintiff that the only issue would be the amount of damages due her. As in *Zimmerman,* an insurer is still entitled to the "safe harbor" when narrowing the legitimate issues favorably to the insured. Accordingly, Tri-Met's "safe harbor" letter satisfied the statute.

B.  *Zero Damages—Not Necessarily An Impermissible Issue*

If the letter suffices, plaintiff then argues that Tri-Met raised an impermissible issue in its fourth affirmative defense and its responses to requests for admissions. In that defense, Tri-Met had alleged that whatever benefits might be due plaintiff must be calculated in light of "any other collateral benefits to which plaintiff may be entitled, including but not limited to other uninsured motorist coverage, insurance benefits, governmental benefits or gratuitous benefits." Tri-Met had alleged an offset to recognize whatever damages might already have been paid.[8]

In plaintiff's view, the only legitimate issue is the *extent* of damages, and any pleading or discovery response that reserves the prospect that plaintiff might recover no

---

[8] An offset is authorized in two statutes. Both apply to a self-insurer like Tri-Met who, due to ORS 278.215(2), must comply with ordinary terms of UM/UIM insurance. First, ORS 742.504(7)(c)(B) provides that the sums payable by a UM/UIM insurer "shall be reduced by" those sums already paid and the present value of all amounts payable by workers' compensation, disability benefits, or similar law. Second, ORS 278.215(3), specific to self-insurers, states, "The uninsured motorist coverage provided under this section shall be excess over any other collateral benefits to which an injured person is entitled, including, but not limited to, other uninsured motorist coverage, insurance benefits, governmental benefits or gratuitous benefits." The latter provision is, word for word, Tri-Met's fourth affirmative defense.

damages at all raises an added and impermissible issue. Plaintiff explains:

> "This is so because in *Grisby v. Progressive [Preferred Ins. Co.]*, 343 Or 175, 182-83, 166 P3d 519 (2007), the Court held that when the insurer asserts 'that Plaintiff is entitled to a payment of zero,' an issue *other than* 'the amount of benefits due the insured' is raised."

(Emphasis in original.) Plaintiff supposes that the defense could have entitled Tri-Met to a "credit against Plaintiff's UM damages, permit[ing] the fact finder to determine that Plaintiff had already been fully compensated for her injuries and thus award zero damages."

For a similar reason, plaintiff criticizes Tri-Met's responses to requests for admissions. Plaintiff had sought admissions that she was injured, that she had at least some damages, that her medical care was reasonable, and that she was entitled to UM benefits. Tri-Met did not wholly admit or deny such requests. Tri-Met responded repeatedly that it accepted coverage and was limited to disputing only damages. But, because Tri-Met did not admit that something more was due than the medical bills it had paid through PIP benefits, plaintiff argues that she was forced to prove "that she was even injured in the accident in the first place." She continues, "If Plaintiff fails in her proof on that issue, the fact finder is permitted to award zero." She concludes, "By requiring that Plaintiff prove that an injury actually occurred, as opposed to the extent of the injuries she suffered, Tri-Met raises an *issue* whether any compensation could be found owing." (Emphasis in original.)

Our recent decision in *Spearman v. Progressive Classic Ins. Co.*, 276 Or App 114, 116, 120, 128, 366 P3d 821 (2016), rejects plaintiff's central argument that the possibility of "zero dollars" in a UM claim is necessarily an added issue or an impermissible result in the ordinary and permissible determination of damages due in a UM claim. The Supreme Court's rationale in *Grisby* as to PIP benefits does not extend to UM/UIM damages. *Spearman*, 276 Or App at 123-24. This is so because PIP "benefits" and UM/UIM "damages" are different terms within ORS 742.061(2)

and (3). *Id.* They are determined differently according to the respective statutes that are the sources of PIP or UM/UIM payments. *Id.* at 127. The determination of damages in a UM/UIM claim permits the prospect of a zero recovery when a plaintiff's proof of the other driver's liability fails. *Id.* at 121-22. Similarly, the determination of damages permits the prospect of a zero recovery when a plaintiff's proof of damages fails as a matter of fact—whether by reason of a failure of proof of injury, causal connection, or reasonableness of medical bills. *Id.* at 136 (DeVore, J., concurring); *see also Pinkerton v. Tri-Met*, 203 Or App 525, 534, 125 P3d 840 (2005) (reversing judgment for plaintiff because expert testimony was lacking and was required for recovery of damages). In the determination of damages, a zero recovery can be a permissible outcome in a UM/UIM claim as a simple matter of fact or evidence, and, as such, it is a permissible outcome within the bounds of the fee exemption in ORS 742.061(3). Accordingly, defendant's fourth affirmative defense and discovery responses do not exceed the scope of the fee exemption by reason of plaintiff's concern about a zero recovery.

C. *Immaterial Allegations—No Actual Dispute*

Even so, the question remains whether Tri-Met's mere allegation of a collateral-source offset in itself creates an impermissible, added issue that disqualifies the insurer from the fee exemption. If we understand that the permissible issue of "damages due," under ORS 742.061(3), means only those sums payable by the offending motorist, then Tri-Met's allegation of a collateral-source offset could risk creating an added issue. *Spearman*, 276 Or App at 121, 124 (damages due does not mean money due from insurer). Plaintiff argues that Tri-Met's allegation of an impermissible issue automatically and forever disqualifies the insurer from the fee exemption even when the potential issue was never actually disputed, the issue played no role in the case, and, throughout the claim, the insurer adhered to its promise to limit the disputed issues to fault and damages. In plaintiff's view, it did not matter whether an impermissible issue was actually disputed. She argues that "ORS 742.061(3) immunity is conditioned upon whether a prohibited issue is *raised*,

and not whether proof on the prohibited issue is actually presented."[9] (Emphasis in original.)

Plaintiff does not contend that collateral source payments reduced her award or were even in evidence when her claim was heard in court-annexed arbitration. Although no record was available of that proceeding, she intimates that "Tri-Met may claim that it abandoned that defense before the arbitrator." As tacitly conceded, the record does not indicate that the collateral payment matter developed into an actual dispute between the parties. If anyone could have known whether the collateral source defense became an actual issue, it would have been the court-annexed arbitrator. But, as it happened, she denied recovery of plaintiff's attorney fees. After the arbitrator denied recovery of fees, plaintiff took exceptions to the arbitration award. But, when appealing the denial to circuit court, plaintiff did not suggest, by affidavit, exhibit, or stipulation, that the collateral source issue had actually been disputed in the prior proceedings. Nor did plaintiff argue that an actual dispute over collateral payments had occurred.

From all that the record reveals, the collateral source allegation was a nonissue in determination of plaintiff's claim. As a result, the question becomes whether an insurer's undeveloped allegation of a collateral-source offset disqualifies the insurer from the fee exemption in ORS 742.061(3) when there was no actual dispute about the term's existence, enforceability, or applicability—indeed, when it seems not to have been involved in the claim at all.

Addressing a different issue, we have disapproved an insurer's general reservation of an option to dispute coverage. Within the ambit of PIP insurance, we have held that an insurer cannot purport to agree to limit the issues to the

_____

[9] In the circuit court, plaintiff stressed that the

"court is *not* deciding whether Tri-Met offered proof at [court-annexed] arbitration on any of the multiple non-damage issues it raised. Safe harbor fee relief is conditioned upon the insurer's pledge not to *raise* issues other than 'how much' is owing, so Tri-Met forfeits safe harbor when it alleges non-damage issues in its pleadings."

(Emphases in original.)

amount of PIP benefits due while, in the same "safe harbor" letter, still "leav[ing] open the possibility that a claim for benefits may be denied outright." *Badrick v. Farmers Ins. Co.*, 238 Or App 320, 328, 242 P3d 685 (2010). Recently, we have held that an insurer is ineligible for the fee exemption when the insurer issues a "safe harbor" letter and follows it with an answer to the complaint, in which the insurer asserts an affirmative defense, among others, demanding full "contractual compliance," thereby effectively reserving all coverage defenses. *Kiryuta v. Country Preferred Ins. Co.*, 273 Or App 469, 359 P3d 480 (2015), *rev allowed*, 358 Or 529 (2016). (UIM claim where the insurer asserted benefits "are subject to all terms and conditions of the policy of insurance.") Those cases demonstrate that an insurer cannot qualify for the fee exemption by seeming to accept coverage in the "safe harbor" letter while generally reserving the prospect to deny coverage.

Those cases, however, did not consider the question here involving an insurer's reference to a *particular* provision, one which did not develop into an actual dispute and especially one that was potentially necessary to calculate sums ultimately payable, such as a policy limit or an offset against damages. *See, e.g.*, ORS 742.504(1)(a) (sums insurer will pay); ORS 742.504(2)(j) (defining and circumscribing sums to pay), ORS 742.504(7)(a) (policy limit); ORS 742.504(7)(c)(B) (collateral source offset). Until now, we have not addressed the effect of an allegation of a nonissue.

As is often the case, the answer begins with the statute's text. To reiterate, ORS 742.061(3) provides the exemption from the insured's attorney fees in subsection (1) in these words:

"Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)   The insurer has accepted coverage and the only *issues* are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)   The insurer has consented to submit the case to binding arbitration."

(Emphasis added.) The statute describes both the terms of a "safe harbor" letter, something that is sent at the outset of a claim, and the scope of the "issues" permitted throughout the course of the proceeding through to its conclusion. The statute does not provide a definition of its term "issue" but does illustrate the term "issue" in context when providing that, within the permissible scope of the fee exemption, the parties may dispute the "issues" of the liability of the offending motorist and the damages due the insured. Obviously, those may be hotly contested matters. Therefore, statutory context implies that "issues" are contested matters.

Because the term "issues" lacks a statutory definition, we may refer to a dictionary definition as a reflection of the ordinary meaning that the legislature would naturally have intended. *Comcast Corp. v. Dept. of Rev.*, 356 Or 282, 296, 337 P3d 768 (2014) (referring to dictionary definition where a term is not defined in statute with a specialized meaning). The term "issue" means:

> "**6a :** a point in question of law or fact; *specif* **:** a single material point of law or fact depending in a suit that is affirmed by one side and denied by the other and that is presented for determination at the conclusion of the pleadings[,] **b** (1) **:** a matter that is in dispute between two or more parties or that is to be disputed by the parties **:** a point of debate or controversy * * * (2) **:** a matter not yet finally settled and on the settlement of which something else depends * * * **:** a controverted subject or topic * * *[,] **c :** something entailing alternatives between which to choose or decide * * *."

*Webster's Third New Int'l Dictionary* 1201 (unabridged ed 2002) (boldface in original). At the least, an "issue" is a matter that is asserted by one party, is contravened by another party, and requires resolution. Because the word is used here in the adversarial context of arbitration or litigation, an "issue" is a matter of live controversy, active contest, or actual dispute.

Nothing in the text of ORS 742.061(3) necessarily implies that, after sending a "safe harbor letter," an insurer is automatically or forever disqualified from the fee

exemption because an insurer made reference to an uncontested provision, such as an undisputed policy limit or to an undisputed offset provision that may affect the calculation of sums to be paid. When there has been no actual dispute between the parties about the existence, meaning, or enforceability of an undisputed provision, an insurer's boilerplate reference to such a matter is a nonissue. Even in *Kiryuta*, where an insurer had gone too far, we noted that we did not foreclose the possibility that the insurer could be eligible for the fee exemption by timely amending its pleadings or by "otherwise demonstrating" that only the issues of fault and damages were "in dispute." 273 Or App at 475 n 1. In other words, we may look at the whole of the case as it has unfolded to determine whether, in the end, the insurer has otherwise demonstrated an adherence to the limited issues.

The Supreme Court's decision in *Grisby* serves to illustrate this understanding. In that case, the insurer's defense was very much in dispute; the defense was no idle reference. *Grisby v. Progressive Preferred Ins. Co.*, 343 Or 175, 177, 166 P3d 519, *adh'd to as modified on recons*, 343 Or 394, 171 P3d 352 (2007). The PIP insurer had denied certain chiropractor bills and argued that they were not related to the covered injury. The Supreme Court concluded that, although the insurer had accepted coverage, the insurer had added an issue that was impermissible in the context of PIP benefits, because it was a PIP issue other than one involving the "*amount* of benefits." 343 Or at 397-98 (emphasis added). *Grisby* demonstrates, for our purposes, that the insurer exceeds the fee exemption of ORS 742.061 when the added issue creates an actual dispute between the parties.

In this case, nothing in the record suggests that the collateral source allegation was actually developed, disputed, or decided. Tri-Met's reference to a potential offset for collateral source payments was not shown to have added an actual dispute to the permissible issues. Insofar as the record reflects, Tri-Met adhered to its repeated statements—in its letter, answer, and discovery responses—that fault and damages would be the only issues for determination of the claim. We conclude, therefore, that defendant's reference to a nonissue did not disqualify defendant from

the fee exemption. Tri-Met's fourth affirmative defense did not make the exemption inapplicable.

D.  *Immaterial Allegations—Tri-Met Negligence, Tri-Met Defense*

Plaintiff argues that Tri-Met added an impermissible issue with its fifth affirmative defense, because Tri-Met alleged that, to the extent plaintiff alleged Tri-Met's negligence, plaintiff had failed to state a claim. Plaintiff's contention, as before, is that the defense is impermissible under ORS 742.061(3) in that it could result in an award of "zero damages" or the denial of all coverage or benefits. We address this argument separately because, in this instance, "zero damages" would be the result of something other than failure of proof of fault or damages. The defense might seem to be an impermissible issue that preempts consideration of the legitimate issues of fault or damages. *See Cardenas v. Farmers Ins. Co.*, 230 Or App 403, 215 P3d 929 (release defense impermissibly preempted consideration of damages).

The short answer is that plaintiff misconstrues Tri-Met's defense. In her complaint, plaintiff had alleged a UM claim. Yet, plaintiff had also alleged that the bus driver had panicked, and, perhaps inadvertently, that Tri-Met's negligence was a cause of economic damages. In its essence, of course, the UM claim turns on the fault of the uninsured driver, not Tri-Met. *See* ORS 742.504(1)(a) (UM benefits paid with regard to the fault of the uninsured motorist). The allegation about Tri-Met's negligence was not stated in a separate count or claim; and the allegation may have been out of place in a UM claim. *See* ORCP 18 (stating claims for relief); ORCP 21 E (claims not set forth separately may be stricken); *see also* ORS 742.504(11)(c) (describing the procedure for a UM claim when there are joint tortfeasors, one insured and one uninsured).

In the response to this ambiguous complaint, Tri-Met answered, "To the extent that plaintiff's complaint alleges a claim of negligence by Tri-Met (as opposed to uninsured motorist benefits), plaintiff's complaint fails to state a claim upon which relief may be granted." We read Tri-Met to have flagged plaintiff's allegation of Tri-Met's negligence as a *non sequitur* in a UM claim for the fault of the phantom

driver. Tri-Met responded, out of an abundance of caution, to what might have been a lurking claim for the negligence of Tri-Met itself. Tri-Met did not, however, assert a preemptive defense to the UM claim—one that would preclude determination of the fault of the phantom motorist or damages due. In other words, the fifth affirmative defense was immaterial to the UM claim. It did not disqualify Tri-Met from the protection of ORS 742.061(3).[10]

## IV.   CONCLUSION

In sum, Tri-Met sent a letter that was effective under the terms of ORS 742.061(3). Tri-Met's affirmative defenses and discovery responses did not interpose an impermissible issue, whether by raising the prospect of a "zero result," by referencing a provision that was a nonissue, or by challenging the allegation of Tri-Met's negligence. The trial court did not err when rejecting plaintiff's demand for recovery of attorney fees from Tri-Met. From the outset, Tri-Met had secured its position in the "safe harbor" and remained securely anchored there.

Affirmed.

---

[10] Plaintiff also assailed the prayer at the conclusion of Tri-Met's answer. In routine fashion, it asked for judgment for Tri-Met. The prayer could not, however, create new issues that were not affirmatively asserted in the body of the answer. The prayer is not an allegation of operative fact or reservation of unpleaded issues. *See Marsh v. Davidson*, 265 Or 532, 537, 510 P2d 558 (1973) (discussing the role of a prayer). The body of Tri-Met's answer twice admitted coverage and asserted that the only issue was determination of damages. Construing the answer as a whole, the prayer did not defeat the protection of ORS 742.061(3). *See Congdon v. Berg*, 256 Or App 73, 89-90, 299 P3d 588 (2013) (construing claim form in light of "safe harbor" letter).