No. 572　　　　　June 24, 2026　　　　　831

IN THE COURT OF APPEALS OF THE
STATE OF OREGON

Rachel DOSS,
*Plaintiff-Appellant,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
a corporation,
*Defendant-Respondent.*

Multnomah County Circuit Court
21CV13865; A186254

Angela F. Lucero, Judge.

Argued and submitted March 4, 2026.

Willard E. Merkel argued the cause for appellant. Also on the opening brief was Merkel & Associates. Also on the reply brief was Merkel & Conner, LLC.

Thomas M. Christ argued the cause for respondent. Also on the brief was Sussman Shank LLP.

Before Egan, Presiding Judge, Pagán, Judge, and Kistler, Senior Judge.

KISTLER, S. J.

Reversed and remanded.

**KISTLER, S. J.**

This is the second appeal in this case. Initially, plaintiff appealed the general judgment and challenged the trial court's denial of her attorney fee request. We affirmed the judgment, reasoning that the attorney fee ruling plaintiff challenged was not final when the trial court entered the general judgment and thus was not before us. *See Doss v. Farmers Insurance Company*, 334 Or App 826 (2024) (*Doss I*) (nonprecedential memorandum opinion). After we issued our decision, plaintiff returned to the trial court and filed a motion asking the court to either amend the general judgment or enter a supplemental judgment resolving her attorney fee request. The trial court entered an order denying that motion, which plaintiff now appeals. We reverse and remand.

We state the facts consistently with our decision in *Doss I*. Plaintiff was injured in an automobile accident. After settling with the tortfeasor, plaintiff brought this action against her insurer (defendant) to recover underinsured motorist benefits under defendant's policy. The case was tried to a jury, which found that plaintiff had sustained approximately $350,000 in damages. That verdict exceeded the tortfeasor's policy limits and allowed plaintiff to recover underinsured motorist benefits from defendant. The trial court signed a general judgment on January 19, 2023, which reflected the verdict.

Later, plaintiff filed a request to recover her attorney fees under ORS 742.061(1). Defendant responded that a "safe harbor" provision in ORS 742.061(3) shielded it from liability for plaintiff's attorney fees. Specifically, defendant noted that it had given plaintiff timely written notice that it "accepted coverage," that "the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured," and that defendant "consented to submit the case to binding arbitration." *See* ORS 742.061(3) (identifying those prerequisites for coming within the safe harbor).

Plaintiff, for her part, did not dispute that defendant's written notice brought it within the safe harbor that ORS 742.061(3) provides. She argued, however, that

defendant had left the safe harbor because its answer raised issues beyond those that ORS 742.061(3) permits. On January 27, 2023, the trial court held a hearing on plaintiff's attorney fee request, which it denied. The court entered a general judgment on the morning of February 1, 2023, and signed an order denying plaintiff's fee request that day. On February 3, plaintiff filed a notice of appeal from the general judgment. On February 10, 2023, the trial court entered an order denying plaintiff's fee request.

Plaintiff appealed, assigning error to the trial court's ruling denying her fee request. We did not reach the merits of that ruling. We observed that we "'can address issues related to attorney fees only on appeal from a judgment that is *final as to the matter of attorney fees*, including a determination of any fee amount.'" *Doss I*, 334 Or App at 827 (quoting *Lehman v. Bielenberg*, 257 Or App 501, 511, 307 P3d 478 (2013); emphasis added in *Doss I*). We explained that a "judgment is 'final' as to attorney fees when it resolves all issues regarding [a party's] request for attorney fees." *Id.* at 827-28 (quoting *Petersen v. Fielder*, 170 Or App 305, 310, 13 P3d 114 (2000); brackets added in *Doss I*). We noted, however, that the general judgement did "not resolve any issues regarding [plaintiff's] attorney fee request." *Id.* at 828. Because the trial court's fee ruling was not final when the court entered the general judgment, we affirmed the court's judgment. *Id.*

Five days after we issued our decision, plaintiff returned to the trial court and asked it to do one of two things, each of which rests on a different view of the record. Initially, plaintiff asserted that the trial court had finally resolved her fee request before it entered the general judgment, and she asked the trial court to amend the general judgment to reflect that fact. Alternatively, she argued that, if the trial court's denial of her fee request was not final before the trial court entered the general judgment, then the court should have entered a supplemental judgment rather than an order denying her fee request. Plaintiff argued that, under either view of the record, she could not appeal the denial of her fee request unless the court first entered either an amended general judgment or a supplemental judgment.

The trial court declined plaintiff's request, and she appeals from that order.

Plaintiff renews both requests on appeal. We begin with her request to amend the general judgment. That request is based on the proposition that the trial court's ruling denying attorney fees was final before the court entered the general judgment. Plaintiff's initial request is at odds with our decision in *Doss I*. In that decision, we held that the trial court's fee ruling was not final when the court entered the general judgment. *See id.* at 827-28. It was for that reason that plaintiff's appeal from the general judgment did not include the attorney fee ruling she sought to challenge in *Doss I*. *Id.*

Defendant notes that, under the "law of the case" doctrine, our first decision is controlling. We agree. *See State v. Pratt*, 316 Or 561, 569, 853 P2d 827 (1993) (holding that an earlier appellate ruling that a warrantless arrest was constitutional precluded reconsidering that issue on the defendant's second appeal). As the court reaffirmed in *Pratt*:

> "'It is a general principle of law and one well recognized in this state that when a ruling or decision has been once made in a particular case by an appellate court, while it may be overruled in other cases, it is binding and conclusive both upon the inferior court in any further steps or proceedings in the same litigation and upon the appellate court itself in any subsequent appeal or other proceeding for review.'"

*Id.* (quoting *Simmons v. Wash. F. N. Ins. Co.*, 140 Or 164, 166, 13 P2d 366 (1932)). Plaintiff identifies no reason why that doctrine does not apply here. We accordingly follow our decision in *Doss I* and conclude that the premise on which plaintiff's initial argument rests—that the trial court's ruling denying attorney fees was final before the court entered the general judgment—is not well taken.

We turn to plaintiff's alternative request. That request starts from the proposition that, as we held in *Doss I*, the court's ruling denying plaintiff's fee request was not final when the court entered the general judgment on February 1, 2023. Relying on ORCP 68 C(5)(b)(i), plaintiff argues that the trial court was required to enter its post-judgment fee

ruling as a supplemental judgment.[1] Plaintiff contends that, unless and until the court entered its ruling as a supplemental judgment, she could not appeal it pursuant to ORS 19.205(1).[2]

As we understand defendant's response, defendant argues that there is no material difference between the supplemental judgment that plaintiff asked the court to enter on remand and the order denying plaintiff's request for attorney fees that the court entered on February 10, 2023. Relatedly, defendant argues that plaintiff could and should have appealed the February 10 order pursuant to ORS 19.205(3), and that her failure to do so effectively disposes of her current appeal.[3]

Defendant's argument is at odds with the terms of House Bill (HB) 2646 (2003), which "comprehensively revised the statutes governing judgments." *See Garcia v. DMV*, 195 Or App 604, 606, 99 P3d 316 (2004); *see also Galfano v. KTVL-TV*, 196 Or App 425, 102 P3d 766 (2004). As we explained in *Garcia*, "[w]ith the new statutory scheme [enacted in HB 2646], the legislature parted company with past practice by devising a more formal and seemingly intricate scheme of judgment subcategories or 'types.'" *Id.* at 609. Central to that new, "more formal" scheme are a series of definitions and rules set out in ORS chapter 18. *See Galfano*, 196 Or App at 432-37 (carefully working through the definitions in ORS 18.005 in concluding that an incorrectly captioned judgment document was appealable).

For example, we explained in *Galfano* that, even though it was clear that the trial court had intended to enter an appealable supplemental judgment, the court had incorrectly captioned the judgment document as a "supplemental

---

[1] ORCP 68 C(5)(b)(i) provides that "[i]f any issue regarding attorney fees *** is not decided before entry of a general *** judgment, any award or denial of attorney fees *** shall be made by supplemental judgment."

[2] ORS 19.205(1) provides that, "[u]nless otherwise provided by law, a limited judgment, general judgment or supplemental judgment, as those terms are defined by ORS 18.005, may be appealed as provided in this chapter."

[3] ORS 19.205(3) provides that "[a]n order that is made in the action after a general judgment is entered and that affects a substantial right, including an order granting a new trial, may be appealed in the same manner as provided in this chapter for judgments."

general judgment." 196 Or App at 431. In determining whether the judgment reflected in that document could be appealed, we undertook an extensive examination of the definitions set out in ORS 18.005 before concluding that the substance of the ruling qualified as a "supplemental judgment" and that the judgment document included the minimum formal requirements that ORS chapter 18 specifies. *See id.* at 432-37. Defendant's argument does not focus on the formal requirements that the 2003 Legislature enacted in HB 2646. Rather, its argument is reminiscent of what we described in *Garcia* as the "past practice" of looking at the trial court's intent without regard to matters of form.

Of course, our conclusion that defendant's argument is directed at the wrong target does not necessarily mean that plaintiff correctly argues that the February 10, 2023, order was not appealable. However, as we explain below, the definitions set out in ORS 18.005, read in light of our decision in *Galfano*, establish that an attorney fee ruling that is not final before entry of the general judgment must be entered as a supplemental judgment; it may not be entered as an order; and it must, at a minimum, be labeled as a judgment. Because the court's February 10, 2023, order did not meet those prerequisites, we agree with plaintiff that she could not have appealed it.

We explain the bases for our conclusion briefly. ORS 18.005(17) provides that "'[s]upplemental judgment' means a judgment that may be rendered after a general judgment pursuant to a legal authority." As we explained in *Galfano*, that definition requires that a ruling must qualify initially as a "judgment" and additionally as a "supplemental judgment." 196 Or App at 432. A judgment is "the concluding decision of a court on one or more requests for relief in one or more actions, as reflected in a judgment document." *See* ORS 18.005(8) (defining "judgment"). We concluded in *Galfano* that a fee ruling that becomes final after the entry of a general judgment is a "judgment." 196 Or App at 432-35.

Moreover, an attorney fee ruling that becomes final after a general judgment is entered constitutes a "supplemental judgment" for the purposes of ORS 18.005(17); that is, ORCP 68 C(5)(b)(i) is a "legal authority" that permits

(indeed requires) entering the post-judgment fee ruling as a "supplemental judgment." *See Galfano*, 196 Or App at 437. As we explained in *Galfano*, the 2003 Legislature "intended ORCP 68 to be consistent with the new types of judgments [set out in ORS 19.205] and understood the references in ORCP 68 C(5)(b) to a 'supplemental judgment' for attorney fees to be consistent with the term 'supplemental judgment' as defined in [*former*] ORS 18.005(15) [(2003), *renumbered as* ORS 18.005(17) (2005)]." 196 Or App at 434-35. Reading the definitions in ORS 18.005 together with *Galfano*, we conclude that an attorney fee ruling that becomes final after the entry of a general judgment is a supplemental judgment. It is not an order.[4]

A judgment must be included in a judgment document that, at a minimum, is "plainly titled 'judgment.'" *Galfano*, 196 Or App at 435 (quoting ORS 18.038(1) and ORS 18.005(8)); *see Garcia*, 195 Or App at 613. If a ruling that constitutes a judgment is not plainly titled as a judgment, it is not appealable. *Galfano*, 196 Or App at 436; *Garcia*, 195 Or App at 609. Given our decision in *Doss I*, we agree with plaintiff that the February 10, 2023, order denying her attorney fee request was not appealable. The trial court erred in denying plaintiff's motion to enter a supplemental judgment.[5]

The question that remains is whether the trial court also erred in denying plaintiff's attorney fee request. The parties have briefed that issue twice, once in *Doss I* and

---

[4] We recognize that ORS 18.029 provides that "[t]he provisions of this chapter do not impose any requirement that a court use a judgment for the court's concluding decision on a request for relief if a legal authority allows or requires that the court decide that request for relief by order or other means." However, defendant does not identify any legal authority that allows an attorney fee ruling that becomes final after the entry of a general judgment to be entered as an order. Rather, ORCP 68 C(5)(b)(i) provides that such a ruling must be entered as a judgment.

[5] Defendant argues that plaintiff "clearly waived" any objection to the form of the February 10, 2023, order by not objecting when the court entered it. We note that, in both the briefing and oral argument in *Doss I*, both parties assumed that the trial court's fee ruling was final before entry of the general judgment. It was not until after we issued our decision in *Doss I* that either party reasonably became aware of the procedural problem we identified in *Doss I*. Five days after we issued *Doss I*, plaintiff asked the trial court to enter its attorney fee ruling as a supplemental judgment. On this record, we disagree with defendant that plaintiff waived her objection to the form of the order.

again in this appeal. The issue is almost certain to arise on remand, and we conclude that it is appropriate to resolve the issue now. *See Westwood Construction Co. v. Hallmark Inns*, 182 Or App 624, 639, 50 P3d 238, *rev den*, 335 Or 42 (2002) (addressing attorney fee dispute likely to arise on remand); *cf. State v. Savage*, 305 Or App 339, 470 P3d 387 (2020) (generally recognizing that authority). We accordingly turn to the merits of plaintiff's fee claim.

ORS 742.061(1) provides that a person seeking underinsured motorist benefits from their insurer "is entitled to recover reasonable attorney fees if [a] timely settlement is not made and the plaintiff's recovery exceeds the [insurer's] tender." *See Kiryuta v. Country Preferred Ins. Co.*, 360 Or 1, 3, 376 P3d 284 (2016) (describing ORS 742.061(1)). In this case, defendant does not dispute that plaintiff's damages exceeded defendant's tender, which ordinarily would entitle her to recover her attorney fees. Defendant, however, invoked ORS 742.061(3), which shields insurers from paying attorney fees "when the insurer, in [a timely] writing, has accepted coverage; the only issues are 'the liability of the uninsured or underinsured motorist' and 'the damages due the insured,' and the insurer has consented to submit the case to binding arbitration." *Id.* (quoting ORS 742.061(3)).

As noted, plaintiff does not dispute that defendant sent her a timely letter that complied with the terms of ORS 742.061(3). The only question is whether defendant raised issues beyond those that ORS 742.061(3) permits and thus lost the protection that ORS 742.061(3) provides. On that question, plaintiff notes that defendant's answer denied, among other things, paragraphs six and nine of her complaint. Paragraph six alleged that the tortfeasor "was an underinsured motorist because the automobile liability benefits available to her [under the tortfeasor's policy] were inadequate to pay all of the damages" that plaintiff sustained. Paragraph nine alleged that:

> "Plaintiff has in all things conformed to and observed and performed according to the policy and the conditions thereto annexed, including obtaining Defendant's permission and consent to her settlement with [the] tortfeasor [and the tortfeasor's insurer], and including all requirements of the

un[der]insured motorist coverage of the aforesaid insur-
ance policy and the UM/UIM statutory provisions found at
ORS 742.504 *et seq.*"

Finally, plaintiff notes that defendant denied her request
to admit that plaintiff "has sustained all of the obligations
required of [her] in order to be eligible for the payment of
[UIM] benefits" under defendant's policy.

Plaintiff argues that each of those denials took
defendant out of the safe harbor that ORS 742.061(3) pro-
vides. We need not decide whether defendant's answer deny-
ing paragraph six took it out of the safe harbor. Even if it did
not, defendant's answer denying paragraph nine did.

ORS 742.061(3) provides that the safe harbor is
available only if the insurer "accept[s] coverage." In deny-
ing paragraph nine, defendant did not accept coverage. It
denied it. If defendant had accepted coverage, it would have
admitted paragraph nine; that is, it would have admitted
that plaintiff had complied with all the applicable terms and
conditions of its policy. Substantively, denying paragraph
nine of plaintiff's complaint does not differ materially from
the affirmative defense the insurer alleged in *Kiryuta*—that
the insured's eligibility to recover uninsured motorist ben-
efits was "subject to all [the] terms and conditions of the
policy of insurance, including UIM/UM limits and 'other
clauses.'" *See* 360 Or at 4 (describing the insurer's affirma-
tive defense). The court held in *Kiryuta* that alleging that
defense took the insurer out of the safe harbor. Defendant's
denial of paragraph nine had the same effect here.[6]

Defendant advances three arguments why, despite
its denial of paragraph nine, it stayed within the safe harbor.
We begin with defendant's broadest argument. Defendant
contends that "an insurer's reference in its pleading to an

---

[6] Defendant's denial in this case and the insurer's affirmative defense in
*Kiryuta* differ procedurally, but they do so in a way that places a greater burden on
plaintiff. In *Kiryuta*, the burden of production and persuasion was on the insurer
to prove its affirmative defense. In this case, defendant's denial of paragraph nine
left the burden of production and persuasion on plaintiff to prove the allegations
in that paragraph. Ultimately, however, what matters in determining, at least
initially, whether an insurer remains within the safe harbor that ORS 742.061(3)
provides is whether the insurer's pleadings put substantive issues in play that go
beyond what ORS 742.061(3) permits. *See Kiryuta*, 360 Or at 5.

issue beyond damages and the liability of the underinsured motorist does not *itself* take the case outside of the ORS 742.061(3) safe harbor if, as it turns out, the parties don't actually litigate the extraneous issue at trial." (Emphasis in original.) Defendant notes that its trial memorandum only disputed the damages due plaintiff and that the sole issue that ended up being litigated at trial was one that ORS 742.061(3) permits. It follows, defendant concludes, that it stayed within the safe harbor.

Defendant's argument is at odds with both our and the Supreme Court's opinions in *Kiryuta*. In our opinion, we noted that the insurer argued that, even if its pleadings asserted issues that went beyond what ORS 742.061(3) permits, "no issues other than the damages due [the] plaintiff were litigated in the arbitration" hearing. *See Kiryuta v. Country Preferred Ins. Co.*, 273 Or App 469, 473-74, 359 P3d 480 (2015), *aff'd*, 360 Or 1, 376 P3d 284 (2016) (describing the insurer's arguments). For that reason, the insurer contended that it stayed within the safe harbor that ORS 742.061(3) provides.

We reached a different conclusion. We explained that the "fact that [the insurer] may not have followed through with [its] litigation strategy at the arbitration proceeding makes no difference." *Id.* at 474. The insurer had not amended its pleadings to eliminate the affirmative defense, and the insured "had to be prepared at the arbitration hearing to meet any proof that [the insurer] might offer consistent with its pleadings." *Id.* at 474-75. We concluded that, in those circumstances, the insurer's last-minute change of heart was not sufficient to keep it within the safe harbor. *Id.* In reaching that conclusion, we did not foreclose the possibility that an insurer could "amend[ ] its pleadings in a timely way or otherwise demonstrat[e] that only the issues of liability and damages are in dispute so as to conform them to the requirements of ORS 742.061(3)." *Id.* at 475 n 1. The insurer had not done that, however.

The Supreme Court affirmed our decision in *Kiryuta*. *See* 360 Or at 8. Focusing on the pleadings, the court reasoned that, "[w]hen, as framed by the pleadings, the 'issues' for arbitration are not limited to 'the liability of

the uninsured or underinsured motorist' and 'the damages due the insured,' the insurer is not entitled to the protection of ORS 742.061(3)." 360 Or at 5. The court noted the possibility, as we had, that the insurer might have stayed within the safe harbor if it had amended its pleadings in a timely way to limit the disputed issues to those that ORS 742.061(3) permits; however, it had not done so. *Id.* at 8 n 5. The court accordingly rejected, as we had, the argument that an insurer can stay within the safe harbor if it waits until shortly before the arbitration hearing begins to limit the issues raised by its pleadings.

In this case, defendant filed its answer denying paragraph nine in mid-April. Defendant did not narrow the issues raised by its pleadings until it filed its trial memorandum on December 9, three days before trial began. It follows from both our opinion and the Supreme Court's opinion in *Kiryuta* that defendant's first argument fails.

Defendant's second argument is a narrower version of its first argument. Specifically, defendant relies on our decision in *Robinson v. Tri-Met*, 277 Or App 60, 370 P3d 864 (2016), *rev den*, 361 Or 886 (2017), which we issued three months before the Supreme Court's decision in *Kiryuta*. In *Robinson*, we distinguished our decision in *Kiryuta*, but we could not and did not consider whether our reasoning in *Robinson* was consistent with the Supreme Court's later decision in *Kiryuta*.[7] With that preface, we turn to our decision in *Robinson*.

In *Robinson*, we described two categories of pleadings that raise issues that go beyond what ORS 742.061(3) permits: (1) pleadings that "generally reserv[e] the prospect to deny coverage" and (2) pleadings that raise only what we described as a "nonissue." *See* 277 Or App at 71-73. We explained that the pleadings in *Kiryuta* were an example of the first type of pleadings—pleadings that "effectively

---

[7] We note the point because the Supreme Court described the issues raised by the insurer's affirmative defense in *Kiryuta* more narrowly than we did. *Compare Kiryuta*, 360 Or at 8 (interpreting the affirmative defense in light of the insurer's admissions in its answer), *with Kiryuta*, 273 Or App at 481 (describing the affirmative defense only by its title "Contractual Compliance"). Arguably, the Supreme Court's more specific description of that defense could call into question the way that *Robinson* distinguished our decision in *Kiryuta*.

reserve[ed] all coverage defenses." *Id.* at 71. Focusing on the first category of pleadings, we reaffirmed our holding in *Kiryuta* that "an insurer cannot qualify for the fee exemption by seeming to accept coverage in the 'safe harbor' letter while generally reserving the prospect to deny coverage." *Id.* That was so even if the insurer limited the issues litigated at the arbitration hearing or trial to the issues ORS 742.061(3) permits.

We described the second category of pleadings as ones that allege a "nonissue." *Id.* at 73. We identified two characteristics of pleadings that allege a "nonissue." First, the pleading alleges an undisputed policy term that is directed at an issue, such as an offset, that arguably bears on the damages due the insured. *Id.* (identifying offsets as the sort of policy term that potentially could "affect the calculation of sums to be paid"). Second, a nonissue involves "no actual dispute between the parties about the existence, meaning, or enforceability of an undisputed provision." *Id.* We explained that, when the pleadings allege only a nonissue, a court may look to the "whole of the case," including the issues actually litigated at trial or arbitration, to determine whether an insurer has left the safe harbor that ORS 742.061(3) provides. *Id.* We followed *Robinson* in *Berger v. Safeco Ins. Co.*, 305 Or App 380, 386-87, 470 P3d 420, *rev den*, 367 Or 290 (2020).

As we understand defendant's second argument, it rests on the proposition that any issues raised by its denial of paragraph nine were at most "nonissues," as *Robinson* defined that term. It follows, defendant reasons, that we can and should look to the issues actually litigated at the trial in this case to determine whether defendant stayed within the safe harbor. In considering defendant's second argument, we need not decide whether there is any tension between our reasoning in *Robinson* and the Supreme Court's decision in *Kiryuta*. Even if we assume that our reasoning in *Robinson* is consistent with the court's decision in *Kiryuta*, defendant's second argument still fails.

In this case, defendant broadly denied coverage when its answer denied that plaintiff had "in all things conformed to and observed and performed according to the policy

and the conditions thereto annexed." That pleading did not allege a "nonissue." Rather, it alleged a general denial of coverage, which falls within the first category of pleadings that *Robinson* identified. That is, even if *Robinson*'s distinction between two categories of pleadings is good law, our decision in *Kiryuta* controls, and defendant's last-minute decision to narrow the issues for trial does not permit defendant to take advantage of the protections that ORS 742.061(3) provides.

Defendant's final argument presents a different issue. Defendant relies on ORCP 20 A for the proposition that its answer denying paragraph nine had no appreciable effect on what plaintiff had to prove at trial. ORCP 20 A states a rule for pleading conditions precedent. It provides:

> "In pleading the performance or occurrence of conditions precedent, it is sufficient to allege generally that all conditions precedent have been performed or have occurred. A denial of performance or occurrence shall be made specifically and with particularity, and when so made the party pleading the performance or occurrence shall on the trial establish the facts showing such performance or occurrence."

As we understand defendant's argument, it assumes that paragraph nine of plaintiff's complaint alleged only that plaintiff had complied with all conditions precedent. It follows from ORCP 20 A, defendant reasons, that its general denial of paragraph nine meant that plaintiff could recover under the policy without having to prove at trial that she had satisfied any specific condition precedent. Apparently, in defendant's view, its answer denying paragraph nine, in effect, admitted it.

One difficulty with defendant's argument is the assumption that underlies it. We agree with defendant that paragraph nine includes an allegation that plaintiff had complied with all conditions precedent. But that is not all that paragraph nine alleges. It also alleges that plaintiff "has in all things conformed to and observed and performed according to the policy and the conditions thereto annexed." The phrase "all things" is broad. It includes but is not limited to conditions precedent. It follows that, even if ORCP 20 A relieved plaintiff of the obligation to prove that she

had complied with specific conditions precedent, it did not relieve her of the obligation to prove that she had complied with the other policy terms and conditions that defendant's denial of paragraph nine put at issue.

The Supreme Court considered a similar argument in *Kiryuta*. *See* 360 Or at 8. The court acknowledged that the insurer's answer in that case

> "admitted that [the insured] had conformed to all policy conditions and requirements and had performed all preconditions to the recovery of benefits. However, the admissions in that paragraph do not address other provisions of the insurance policy that potentially could preclude coverage of plaintiff's losses and therefore do not demonstrate that [the insurer] accepted coverage. Moreover, the insurer's 'contractual compliance' defense is broadly worded and permits [the insurer] to invoke any of the 'terms and conditions' of the insurance policy to defeat [the insured's] claim."

*Id.* The court held that, in those circumstances, the insurer was not entitled to the protection of ORS 742.061(3). *Id.*

As we understand the Supreme Court's reasoning in *Kiryuta*, it recognized that, even though the insurer admitted that the insured had performed all conditions precedent, it did not admit that the insured had satisfied other policy provisions that could potentially preclude coverage.[8] *See id.* The same reasoning applies here to what defendant perceives is the effect of its denial of paragraph nine, viewed through the lens of ORCP 20 A. Following the Supreme Court's decision in *Kiryuta*, we hold that defendant is not entitled to the protections of ORS 742.061(3). We accordingly reverse the trial court's order and remand this case for further proceedings consistent with this decision.

Reversed and remanded.

---

[8] Moreover, the insurer's concession in *Kiryuta* was not limited to conditions precedent but included all "policy conditions and requirements." *See* 360 Or at 8. The court still concluded that the insurer's concession left the insured exposed to "other provisions of the insurance policy that potentially could preclude coverage of plaintiff's losses." *Id.*