EGAN, C. J.
*486 Plaintiff Douglas Berger prevailed in this action to recover personal injury protection (PIP) and uninsured motorist (UM) benefits under an automobile insurance policy with defendant State Farm. Plaintiff appeals from a judgment rejecting his request for attorney fees under ORS 742.061(1), after the trial court concluded that State Farm had complied with the "safe-harbor" provisions, ORS 742.061(2) (PIP) ; ORS 742.061(3) (UM), on each claim. We review the trial court's ruling relating to attorney fees for legal error, Robinson v. Tri-Met , 277 Or. App. 60, 61, 370 P.3d 864 (2016), rev. den. , 361 Or. 886, 403 P.3d 763 (2017), conclude that the trial court erred in rejecting plaintiff's request for attorney fees on the PIP claim, and therefore reverse and remand for an award of attorney fees.
*79 Plaintiff owned a motor vehicle insurance policy issued by State Farm that provided statutorily required PIP and UM coverage. Plaintiff's PIP benefits under the policy provided for payment of up to $15,000 in medical expenses and a percentage of lost wages.[1] Plaintiff's UM coverage limits were $250,000.
Plaintiff was injured in an accident with a hit-and-run vehicle on February 6, 2012. Plaintiff notified State Farm of his injuries and, on February 7, 2012, State Farm sent plaintiff a letter accepting coverage of a UM claim:
"Since your injuries were caused by an uninsured motorist, we have accepted coverage and you have the right to make a claim for uninsured motorist benefits under your policy, with liability and damages being the remaining issues to be resolved. As provided by your policy, State Farm consents to the submission of your uninsured claim to binding arbitration."[2]
Plaintiff received treatment from a chiropractor and sought benefits for medical expenses and lost wages under *487 the PIP provisions of his policy. State Farm sent plaintiff a letter on February 9, 2012, acknowledging the PIP claim and describing plaintiff's benefits. State Farm paid plaintiff PIP benefits of $12,296.57 for medical expenses and $15,271.86 for lost wages.
In July 2012, at State Farm's request, plaintiff was examined by Dr. Williams, a neurosurgeon, and Dr. Moore, a chiropractor/naturopath, both of whom opined that plaintiff did not have any signs or symptoms of ongoing injury. On July 11, 2012, State Farm notified plaintiff by letter that it would no longer pay PIP benefits:
"Dr. Williams and Dr. Moore concluded that you have reached maximum medical improvement for your care related to the 2/6/12 motor vehicle accident; therefore we are unable to pay for any additional treatment/wage loss under your PIP coverage as of 7/11/12.
"Should you disagree with our position, you have the option to request arbitration in accordance with Oregon's personal injury protection statute ( ORS 742.520 ). If you do not want to resolve the dispute through arbitration, you have the option of pursuing legal action.
"State Farm acknowledges that your policy does provide personal injury protection (PIP) coverage for this accident and that the only dispute is the amount of PIP benefits owed. State Farm consents to binding arbitration to resolve the dispute over the amount of PIP benefits you are owed[.]"
Plaintiff brought this action against State Farm, captioned as a claim for breach of contract, seeking additional PIP benefits of approximately $23,500, and damages under the UM coverage of the policy not to exceed $250,000.[3]
In responses to requests for admissions, State Farm admitted that plaintiff had received medical treatment necessitated by injuries he sustained in the accident and that medical service charges through May 6, 2012, were reasonable. In its answer to plaintiff's amended complaint, State Farm did not dispute coverage or the tortfeasor's *488 liability and admitted that "there is an on-going dispute about the amount to which plaintiff would be entitled as damages under his uninsured motorist coverage" and about "the amount which plaintiff would be entitled under his PIP coverage." State Farm also alleged affirmative defenses (1) that plaintiff was not entitled to attorney fees because defendant had provided timely notice under ORS 742.061 ; (2) that plaintiff's damages, if any, are subject to policy limitations; and (3) that plaintiff's breach of contract claim *80 should be dismissed for failure to state ultimate facts sufficient to constitute a claim, because "there has been no breach of any policy conditions by the defendant." However, it is undisputed that State Farm admitted both before and at trial that plaintiff had coverage under the policy and that the uninsured driver was at fault.
The only dispute at trial concerned the amount of PIP or UM benefits due plaintiff. After a three-day trial, the jury awarded plaintiff additional PIP benefits of $2,703.47 for medical expenses and $18,000.00 for lost wages, and $41,481.00 in UM benefits.
Plaintiff requested attorney fees under ORS 742.061, which provides, as relevant:
"(1) Except as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon. * * *
"(2) Subsection (1) of this section does not apply to actions to recover personal injury protection benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
"(a) The insurer has accepted coverage and the only issue is the amount of benefits due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration.
*489 "(3) Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
"(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration."
State Farm responded that it had complied with the safe-harbor provisions of ORS 742.061(2) and ORS 742.061(3) on plaintiff's PIP and UM claims, which provide exceptions to the award of attorney fees that would otherwise be assessed under ORS 742.061(1). The trial court agreed, and denied plaintiff's request for attorney fees.
On appeal, plaintiff challenges that ruling. In his first assignment, plaintiff contends that the trial court erred in determining that State Farm met the safe-harbor provision with respect to the PIP claim. State Farm responds that it complied with ORS 742.061(2) by its July 11, 2012, letter to plaintiff in which it stated:
"State Farm acknowledges that your policy does provide personal protection (PIP) coverage for this accident and that the only dispute is the amount of PIP benefits owed. State Farm consents to binding arbitration to resolve the dispute over the amount of PIP benefits you are owed."
Plaintiff replies that the letter was not sufficient to bring State Farm within the safe harbor, because it also denied out-right further PIP benefits. Plaintiff is correct that, although State Farm's letter purported to limit the dispute to the amount of PIP benefits owed plaintiff, it did not have that legal effect. That is because, as State Farm acknowledges on appeal, the basis for State Farm's denial was that further medical services were not reasonable and necessary. In Grisby v. Progressive Preferred Ins. Co ., 343 Or. 175, 182-83, 166 P.3d 519, adh'd to as modified on recons. , 343 Or. 394, 171 P.3d 352 (2007), the Supreme Court held that, in the context of a PIP claim, the assertion that medical services are *490 not reasonable and necessary brings the dispute outside of the safe harbor. The court reasoned that, in PIP litigation, a dispute only as to the "amount due" for purposes of ORS 742.061(2) is a dispute concerning the dollar level of a claim for services that a provider submits and does not include an insurer's denial of a particular claim for services. Id . The court said that disputes about whether the insurer should pay for services at all, such as the relationship between the claimed expense and the *81 insured's accident or whether the provider's charge is reasonable and necessary, are disputes about the denial of benefits that extend beyond "amounts due." Id . at 183, 166 P.3d 519. State Farm's denial of PIP benefits for the reason that additional medical services were not reasonable and necessary requires the conclusion that the dispute was not limited to the amount of benefits due plaintiff. Because plaintiff recovered more on his PIP claim than any tender by State Farm, plaintiff is entitled to recover his reasonable attorney fees on that claim.[4]
In his second assignment, plaintiff contends that the trial court erred in rejecting his request for attorney fees on the UM claim. The UM claim is subject to a safe-harbor provision set forth in ORS 742.061(3) :
"Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
*491 "(a) The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and
"(b) The insurer has consented to submit the case to binding arbitration."
It is undisputed that State Farm's February 7, 2012, letter to plaintiff complied with ORS 742.061(3). In plaintiff's view, however, State Farm's subsequent pleadings removed the safe-harbor protection. See Kiryuta v. Country Preferred Ins. Co. , 360 Or. 1, 8, 376 P.3d 284 (2016) (In a UM/UIM case, the insurer lost the protection provided by ORS 742.061(3) when it asserted in its answer that any UM or UIM benefits were "subject to all terms and conditions of the policy," because there were terms and conditions in the policy that could effectively result in a denial of coverage.).
We note that the legal landscape relating to UM claims has changed considerably since this case was briefed and argued. In Kiryuta , the Supreme Court affirmed our opinion that an insurer can forfeit safe-harbor protections secured by written communication to the insured by engaging in litigation strategy that places coverage at issue. Id . at 8, 376 P.3d 284. In Spearman v. Progressive Classic Ins. Co. , 361 Or. 584, 396 P.3d 885 (2017), the Supreme Court addressed the attorney fee safe harbor in the context of UM coverage and, specifically, what is meant in ORS 742.061(3) by "damages due the insured." The court reiterated that the focus of UM coverage is to place the injured policyholder in the same position he or she would have been in if the tortfeasor had had liability insurance. Id . at 592, 396 P.3d 885. But UM coverage is premised on the fault of the uninsured motorist, and the insured is entitled to recover only to the extent that the insured could recover directly from the tortfeasor. Id . at 593, 396 P.3d 885. For that reason, the liability of the tortfeasor is an issue that can be raised in a UM claim without a loss of the safe harbor. Additionally, the court in Spearman concluded that, as distinguished from the court's construction of ORS 742.061(2) in Grisby , "[n]othing in the text of ORS 742.061(3) suggests that the 'damages due the insured' must be some amount above zero." Id. at 593, 396 P.3d 885. Issues that may be raised by the insurer without losing the safe-harbor protection of ORS 742.061(3) include questions about the *82 "nature and extent" of the insured's injuries *492 and the reasonableness and necessity of medical expenses. Id . at 600, 396 P.3d 885.[5]
The court's conclusions in Spearman are significant in this case, because plaintiff's arguments are premised on the view that the court's construction of ORS 742.061(2) in Grisby controls in the UM safe-harbor context, and that a dispute or issue raised by an insurer that could result in zero UM benefits exceeds the limits set forth in ORS 742.061(3). The court explicitly rejected that view in Spearman . 361 Or. at 595, 396 P.3d 885 (" Grisby does not control our decision in this case. * * * [G]iven the nature of UM/UIM claims, [damages due the insured] may in some cases be zero."). Spearman disposes of plaintiff's contention here that State Farm's denial of UM benefits because medical services are not reasonable and necessary goes beyond issues that relate to "damages due the insured." 361 Or. at 600, 396 P.3d 885. Necessarily, Spearman also disposes of plaintiff's contention that such a denial raises a "coverage" issue or that any affirmative defense that potentially results in zero coverage is beyond the dispute permitted by ORS 742.061(3).
Plaintiff contends that State Farm lost its safe harbor protection on the UM claim by raising other issues in its pleadings that plaintiff characterizes as "coverage." For example, although State Farm had not previously disputed coverage or the uninsured driver's liability, State Farm did not explicitly admit in its answer that an uninsured motorist had caused the accident; rather, State Farm admitted that plaintiff had "reportedly" been in an accident with an uninsured motorist. That allegation, plaintiff contends, allowed State Farm to put on evidence that the accident had not occurred, which could have defeated coverage. State Farm also asserted as an affirmative defense that plaintiff's damages were subject to policy limitations applicable to UM coverage. Plaintiff contended that that allegation permitted State Farm to prove that plaintiff had not complied with policy prerequisites for any benefits. State Farm also alleged that plaintiff's breach of contract claim should be dismissed for failure to state a claim, because "there has *493 been no breach of any policy condition by defendant." Those "coverage" issues, plaintiff contends, went beyond "the liability of the uninsured or underinsured motorist" and "the damages due the insured." ORS 742.061(3)(a).
We reject each contention. In Robinson , we held that a UM insurer does not lose safe-harbor protection by including in its pleadings allegations about particular issues that are not actually in dispute, such as policy limits. "When there has been no actual dispute between the parties about the existence, meaning, or enforceability of an undisputed provision, an insurer's boilerplate reference to such a matter is a nonissue." 277 Or. App. at 73, 370 P.3d 864. In Robinson , the plaintiff was injured when the bus in which she was a passenger swerved to avoid another vehicle that then drove away. The plaintiff sought UM benefits under a policy owned by the Tri-County Metropolitan Transportation District (TriMet). TriMet wrote the plaintiff a letter complying with ORS 742.061(3). The plaintiff ultimately prevailed on the UM claim, but the trial court declined to award attorney fees, concluding that TriMet had complied with ORS 742.061(3). The plaintiff asserted on appeal that affirmative defenses in TriMet's pleading had raised issues of coverage. In rejecting the plaintiff's contention, we reasoned that allegations in TriMet's responsive pleading that the plaintiff's benefits were subject to a collateral source offset and to policy limits did not disqualify TriMet from reliance on the safe harbor, because those issues were not actually disputed or tried. Id. at 72, 370 P.3d 864. We interpreted the term "issues" as used in ORS 742.061(3)(a) to refer to "contested matters." We said that, in determining whether only issues of fault and damages were in dispute, "we may look at the whole of the case as it has unfolded to determine whether, in the end, the insurer has otherwise demonstrated an adherence to the *83 limited issues." Id . at 73, 370 P.3d 864. We noted that, even in this court's opinion in Kiryuta , where the insurer "had gone too far" by raising issues that could go to coverage, we said that the insurer was not precluded from becoming eligible for the fee exemption "by timely amending its pleadings or by 'otherwise demonstrating' that only the issues of fault and damages were 'in dispute.' " Robinson , 277 Or. App. at 73, 370 P.3d 864 (citing our opinion in *494 Kiryuta v. Country Preferred Ins. Co. , 273 Or. App. 469, 475 n. 1, 359 P.3d 480 (2015) ).[6] Citing Grisby , we explained that an insurer can lose the safe-harbor exemption by raising an actual dispute that puts coverage at risk. Robinson , 277 Or. App. at 73, 370 P.3d 864.
Each of the allegations by State Farm here that plaintiff asserts violated ORS 742.061(3) did not raise an "actual dispute" between the parties. Policy limitations were never in dispute. In light of the way the case had been litigated from its inception and at trial, State Farm's admission in its answer that plaintiff had "reportedly" been involved in an accident with an uninsured driver did not create an actual dispute about whether plaintiff had been in an accident. Although, in an affirmative defense, State Farm asserted that plaintiff had failed to state a claim for breach of contract, in its trial memorandum, State Farm explained that its affirmative defense was directed at the characterization of the claim as one for breach of contract, and that the only issue to be tried was plaintiff's damages under his PIP and UM coverages.[7] We conclude that State Farm's affirmative defenses did not put plaintiff's UM coverage at risk. Viewing the litigation as a whole, we conclude that State Farm adhered to its safe-harbor letter stating that it did not dispute UM coverage. The trial court did not err in rejecting plaintiff's claim for attorney fees under ORS 742.061(3).
Remanded for an award of attorney fees on plaintiff's personal injury protection (PIP) claim; otherwise affirmed.

PIP benefits under ORS 742.524(1) consist of "[a]ll reasonable and necessary expenses of medical * * * services within two years after the date of the person's injury, but not more than $15,000 [,]" and "70 percent of the loss of income from work during the period of the injured person's disability[,]" subject to a maximum payment of $3,000 per month and a maximum payment period of 52 weeks.

A hit-and-run vehicle is deemed to be uninsured. ORS 742.504(2)(k)(B).

Plaintiff sought UM benefits to compensate for additional lost wages of $172,967, lost earning capacity of $1,153,511, expenses of $52,000 for rehabilitation, and expenses of $490,875 for "replacement household services."

State Farm points out that, under ORS 742.524(1)(a), its obligation to pay PIP benefits is limited to the payment of "reasonable and necessary" medical expenses during the first year, not to exceed $15,000, and asserts that ORS 742.061(2) necessarily must be read in the context of that limitation. We agree with State Farm that ORS 742.524(1)(a) provides context for ORS 742.061(2). But Grisby forecloses State Farm's argument that a dispute about whether services are reasonable and necessary is limited to the "amount of benefits due." 343 Or. at 183, 166 P.3d 519.
State Farm similarly contends that statutory limitations must also be factored into determining whether a dispute concerns the "amount of benefits due," as used in ORS 742.061(2). We agree with State Farm that raising the issue of a statutory or policy limit on PIP benefits might not result in a loss of the safe-harbor protection. In its opinion in Kiryuta v. Country Preferred Ins. Co. , 360 Or. 1, 8, 376 P.3d 284 (2016), the Supreme Court implied that an affirmative defense of policy limits would not exceed the scope of the UM safe harbor. But here, benefits paid on plaintiff's PIP claim had not reached statutory limits; State Farm simply asserted that further medical services were not reasonable and necessary.

The court also distinguished Grisby based on the different purposes of PIP and UM coverage. Spearman , 361 Or. at 590-93, 396 P.3d 885.

In its opinion in Kiryuta , the Supreme Court did not address that issue. 360 Or. at 8 n. 5, 376 P.3d 284.

State Farm explained in its trial memorandum:
"Plaintiff's claim has been pled as a breach of contract. It is not. In fact, neither party is alleging that the other party has breached any term of the insurance contract. This case is simply about a disagreement between plaintiff and defendant concerning the amount of damages to which plaintiff is entitled under his PIP and UM coverages."