Argued and submitted November 6, 2020; affirmed February 24; appellant's petition for reconsideration filed March 9 and respondent's response filed March 15 allowed by opinion May 4, 2022
See 319 Or App 450, 508 P3d 1001 (2022)

Susann M. THOENS,
*Plaintiff-Respondent,*

*v.*

SAFECO INSURANCE COMPANY
OF OREGON,
*Defendant-Appellant.*

Multnomah County Circuit Court
091116530; A168067

507 P3d 284

A referee awarded plaintiff $695,605.25 in attorney fees pursuant to ORS 742.061(1) following a lengthy nine-year dispute with plaintiff's insurer for underinsured motorist benefits. Defendant appeals from the general judgment that adopted the referee's opinion and order awarding those fees. In defendant's first assignment of error, it contends that the referee erred in granting plaintiff attorney fees and asserts that it was protected by the "safe harbor" provision in ORS 742.061(3). In defendant's second and third assignments of error, it argues alternatively that, even if plaintiff was entitled to attorney fees generally, the referee erred in awarding a lodestar-based fee "on top of the recovery-based fee [plaintiff's attorneys had] already received," and in awarding attorney fees incurred after the case was remanded. *Held*: Defendant left the ORS 742.061(3) safe harbor when, at the jury-instruction phase of the trial, it created an actual dispute regarding a preliminary coverage issue, and, as a result, the issues before the jury were not limited to "the liability of the uninsured or underinsured motorist and the damages due the insured" as required under ORS 742.061(3)(a). Thus, the trial court did not err in adopting the referee's opinion and order that determined that plaintiff was entitled to attorney fees under ORS 742.061(1). Further, the court did not err in awarding fees accrued following remand, or in awarding a fee based on the lodestar calculation.

Affirmed.

Marilyn E. Litzenberger, Judge.

Thomas M. Christ argued the cause for appellant. Also on the briefs was Sussman Shank LLP.

Shenoa Payne argued the cause for respondent. Also on the brief was Shenoa Payne Attorney at Law PC.

Before Ortega, Presiding Judge, and Shorr, Judge, and Powers, Judge.

SHORR, J.

Affirmed.

**SHORR, J.**

The main issue in this case is whether plaintiff, an insured who was awarded underinsured motorist (UIM) benefits following a lengthy dispute with her insurer, defendant Safeco Insurance Company of Oregon (Safeco), is also entitled to recover attorney fees under ORS 742.061. Following a jury trial on the merits of plaintiff's benefit claims, reversal and remand on appeal in *Thoens v. Safeco Ins. Co. of Oregon*, 272 Or App 512, 544, 356 P3d 91 (2015), abatement, arbitration, and finally appointment of a referee to determine the remaining attorney fee issue, plaintiff was awarded $695,605.25 in attorney fees incurred over a nearly nine-year period pursuant to ORS 742.061(1). Defendant appeals from the general judgment that adopted the referee's opinion and order.

In defendant's first assignment of error, it contends that the referee erred in granting plaintiff's petition for attorney fees and asserts that it was protected by the "safe harbor" provision in ORS 742.061(3). In defendant's second and third assignments of error, it argues alternatively that, even if plaintiff was entitled to attorney fees generally, the referee erred in awarding a lodestar-based fee "on top of the recovery-based fee [plaintiff's attorneys had] already received," and in awarding attorney fees incurred after the case was remanded. For the reasons that follow, we affirm.

We address defendants first and third assignments of error first, in that order, because our analysis of those assignments relies on similar facts and law. We address defendant's second assignment of error last.

We begin with the facts relevant to defendant's first and third assignments of error, which are undisputed. On November 28, 2007, plaintiff was operating her motor vehicle when it became the last in a line of vehicles stopped for a school bus and was struck from behind by a vehicle operated by Cody Naylin. Following the collision, plaintiff received significant medical care for injuries she claimed to have sustained during the accident, including spinal surgery and other treatments for headaches, neck pain, pain down her right arm, blurred vision, and balance problems.

After settling with Naylin's automobile insurer for $50,000—the amount of Naylin's liability insurance policy limit—plaintiff sought additional payment under her personal injury protection (PIP) and UIM coverage from defendant Safeco.[1] At the time of plaintiff's accident, UIM coverage was defined by statute as "coverage for bodily injury or death caused by accident and arising out of the ownership, maintenance or use of a motor vehicle with motor vehicle liability insurance that provides recovery in an amount that is less than the insured's uninsured motorist coverage." ORS 742.502(2)(a) (2007), *amended by* Or Laws 2015, ch 5, § 2. Plaintiff's policy included $500,000 in uninsured and underinsured motorist coverage.

Anticipating a possible UIM claim, Safeco sent plaintiff what is commonly referred to as a "safe harbor letter." To explain, prevailing plaintiffs in insurance policy actions are generally entitled to a reasonable attorney fee award. ORS 742.061(1).[2] However, ORS 742.061(1) lists two exceptions, one of which applies to actions to recover UIM benefits:

"(3)  Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:

"(a)  The insurer has accepted coverage and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured; and

"(b)  The insurer has consented to submit the case to binding arbitration."

ORS 742.061(3). Here, defendant timely sent plaintiff a letter invoking the safe harbor, stating that "we accept

---

[1]  Plaintiff's personal injury protection benefit claim is not at issue on appeal.

[2]  As relevant here, ORS 742.061(1) specifically states that

"[e]xcept as otherwise provided in subsections (2) and (3) of this section, if settlement is not made within six months from the date proof of loss is filed with an insurer and an action is brought in any court of this state upon any policy of insurance of any kind or nature, and the plaintiff's recovery exceeds the amount of any tender made by the defendant in such action, a reasonable amount to be fixed by the court as attorney fees shall be taxed as part of the costs of the action and any appeal thereon."

coverage, consent to submit the case to binding arbitration, and agree the only issues are the liability of the potentially underinsured motorist and the damages due the insured." Upon reviewing the claim, defendant denied payment on the basis that plaintiff had not been injured in the collision as she alleged.

Plaintiff filed suit against Safeco, alleging that defendant had breached its insurance contract with plaintiff by denying her claims. Plaintiff's operative complaint alleged that she was entitled to UIM benefits because, "[a]t the time of his involvement in the accident[,] *** Naylin did not possess adequate automobile liability insurance coverage with which to satisfy" plaintiff's damages. Defendant responded:

> "To the extent that plaintiff's amended complaint's reference to 'adequate insurance,' is intended to mean that Mr. Naylin's policy limits were less than the amount that plaintiff *claims* in damages from the accident, the allegation is admitted. To the extent that the reference means plaintiff has actually incurred damages that are reasonable, necessary and related to the accident in excess of Mr. Naylin's limits, the allegation is denied."

(Emphasis in original.)

The case proceeded to jury trial. Defendant moved *in limine* to exclude all evidence of plaintiff's and Naylin's policy limits, contending that such evidence was irrelevant because the jury's only task was to determine what damages plaintiff incurred as a result of the collision. Defendant also argued that that evidence should be excluded pursuant to OEC 403, in part because evidence of plaintiff's $500,000 UIM policy limit could cause an "anchoring" effect that could drive the verdict higher than it would be without that evidence. The court granted defendant's motions.

At the end of the trial, the court proposed to instruct the jury that it did not need to decide the issues to which defendant had already stipulated, including that Naylin was negligent in causing the collision and that he was "underinsured" under the law. The proposed instructions also defined the term "underinsured":

> "UIM benefits are paid if any person covered by the policy is injured as a result of the negligence or fault of an underinsured driver. *A driver is considered underinsured if the driver's own insurance policy is insufficient to compensate the injured person for all of his or her damages resulting from the driver's fault or negligence.*"

(Emphasis added.) Although that language appeared to be consistent with the parties' pleadings, it incorrectly defined the term "underinsured." As explained earlier, at the time of plaintiff's accident, whether a negligent driver was "underinsured" was determined by comparing that driver's liability coverage to the plaintiff's uninsured motorist coverage, not to the plaintiff's damages. In other words, the determination required a "limits-to-limits" comparison rather than the "limits-to-damages" comparison that the proposed instruction contemplated. *Thoens*, 272 Or App at 517; *see also Mid-Century Ins. Co. v. Perkins*, 344 Or 196, 218, 179 P3d 633, *modified on recons*, 345 Or 373, 195 P3d 59 (2008) (under pre-2015 version of ORS 742.502, "an underinsured motorist is a motorist who is insured for an amount that is less than the policy limits of the insured's uninsured motorist coverage"). In fact, Naylin was "underinsured" regardless of the extent of plaintiff's injuries and damages, because his liability limits ($50,000) were lower than plaintiffs uninsured motorist limits ($500,000). *Thoens*, 272 Or App at 517. Rather than objecting to the proposed instruction defining the term "underinsured" on the grounds that it was incorrect under the law, defendant refused to stipulate that Naylin was underinsured. The following exchange occurred:

> "[DEFENSE COUNSEL]: Okay. Second paragraph down—one, two, three—four lines in. Sentence starts with, 'A driver is considered underinsured if the driver's own insurance policy is insufficient to compensate the injured person for all his or her damages.'
>
> "THE COURT:   Yep.
>
> "[DEFENSE COUNSEL]:   Okay. If you turn to Page 7—
>
> "* * * * *

"[DEFENSE COUNSEL]: Third paragraph down. 'Based on Safeco's admission that Cody Naylin was an underinsured motorist and his negligence caused the November 28th, 2007'—on it goes. Our position is that, yes, Cody Naylin was negligent.

"Our position is he—is not that he is an underinsured motorist. That is something that has yet to be determined. We believe his policy is, in fact, sufficient to compensate plaintiff in this case for all her damages.

"THE COURT:   All right.

"[PLAINTIFF'S COUNSEL]:   The instruction on Page 5 I think is still accurate, doesn't need changing. When we get to 7—

"THE COURT:   Well, let me ask—

"[DEFENSE COUNSEL]:   I agree with counsel on that.

"THE COURT:   Okay.

"[DEFENSE COUNSEL]:   That's a correct statement. Just read in context with the part that I directed the Court to is my concern.

"THE COURT:   So under, 'Type of benefits available,' the sentence that you alerted me to that begins, 'A driver is considered'—

"[DEFENSE COUNSEL]:   Yes.

"THE COURT:   —you don't have problems with that?

"[DEFENSE COUNSEL]:   Yes, I do not have any problem with that."

Neither party objected to the incorrect "underinsured" instruction. Nevertheless, the final instructions submitted to the jury did not include any definition of the term "underinsured," despite explaining that "UIM benefits are paid if any person covered by the policy is injured as a result of the negligence or fault of an underinsured driver" and instructing that, for plaintiff to prevail on her UIM claim, she needed to prove that "she was injured in a motor vehicle collision that was the fault of an underinsured driver."

The jury found for plaintiff on her PIP claim and for defendant on the UIM claim. Plaintiff appealed, arguing that the trial court erred in granting defendant's motions *in limine* to exclude all evidence of plaintiff's and Naylin's respective policy limits. *Thoens*, 272 Or App at 513. We agreed with plaintiff and concluded that the trial court had indeed erred. Although plaintiff acknowledged that it would not have been error for the court to exclude the policy limits evidence had it instructed the jury that Naylin was underinsured, we agreed that, "as the case was framed for the jury, however, exclusion of the evidence was error." *Id.* at 520. Considering defendant's refusal to stipulate that Naylin was underinsured, and the instructions that put the concept of "underinsured motorist" before the jury and left them "with the impression that plaintiff was required to prove that Naylin was an 'underinsured motorist,'" the exclusion of plaintiff's and Naylin's respective coverage limits left the jury without "evidence from which they could determine that Naylin was 'underinsured.'" *Id.* at 520-21. We reversed and remanded the case for a new trial on the UIM claim. *Id.* at 544.

On remand, plaintiff moved to abate the case and consented to arbitration, and the court abated the case over defendant's objection.[3] The UIM claim was referred to arbitration, at which point defendant conceded that Naylin was underinsured. The arbitration panel found for plaintiff and awarded her $400,000 in damages. Finally, the parties agreed to the appointment of a referee under ORCP 65 to determine whether plaintiff was entitled to an attorney fee award, and if so, in what amount. As to the UIM claim, the referee acknowledged that defense counsel's refusal to stipulate that Naylin was underinsured may have been "based on counsel's belief that to do so would be to somehow concede that plaintiff was entitled to the damages she claimed." "Nevertheless," the referee concluded, defendant's refusal to stipulate "effectively created a jury issue separate from Naylin's liability and the damages due plaintiff." Thus, defendant's trial conduct placed an issue before the jury that went beyond the permissible safe-harbor issues, eliminating

---

[3] Defendant does not assign error to the trial court's abatement ruling.

defendant's safe-harbor protection. The referee determined that plaintiff was entitled to $695,605.25 in attorney fees, and the trial court entered a general judgment to that effect. Defendant appeals from that general judgment.

Defendant contends in its first assignment of error that the referee erred in awarding plaintiff attorney fees pursuant ORS 742.061(1). We review the trial court's award of attorney fees pursuant to ORS 742.061(1) for legal error. *Berger v. State Farm Mutual Auto. Ins. Co.*, 290 Or App 485, 486, 415 P3d 77, *rev den*, 363 Or 390 (2018) (*Berger v. State Farm*).[4]

The parties essentially reprise the arguments made before the referee. Defendant contends that it was not subject to an attorney fee award because it qualified for the ORS 742.061(3) safe harbor. Defendant acknowledges that ORS 742.061(3) does not apply unless the disputed issues are limited to "the liability of the uninsured or underinsured motorist and the damages due the insured." Defendant also acknowledges that whether Naylin was an underinsured motorist became a disputed issue in the case. However, defendant asserts that it retained the protections of the safe harbor due to the specific fashion in which the dispute arose. Defendant contends that it "didn't raise the issue [of] whether Naylin was underinsured—plaintiff did," and claims that it "wanted a trial on damages only *** but couldn't get it over plaintiff's opposition." Defendant also asserts that it had no choice but to refuse to stipulate, because stipulating would have essentially conceded that plaintiff had over $50,000 in damages, contrary to defendant's theory of the case that plaintiff had not been injured in the accident. In other words, defendant argues that it "didn't sail out of the harbor, plaintiff dragged it out unwilling."

In response, plaintiff contends that the jury would not have been tasked with deciding a non-safe-harbor issue—whether Naylin was underinsured—but for defendant's

---

[4] Throughout this opinion, we cite to two cases, involving wholly different litigants, that are both known as Berger. *See Berger v. Safeco Ins. Co.*, 305 Or App 380, 470 P3d 420, *rev den*, 367 Or 290 (2020) (*Berger v. Safeco*); *Berger v. State Farm Mutual Auto. Ins. Co.*, 290 Or App 485, 415 P3d 77, *rev den*, 363 Or 390 (2018) (*Berger v. State Farm*).

refusal to stipulate to that fact. Plaintiff argues that defendant bears responsibility for its "strategic choice" to dispute Naylin's status as an underinsured motorist, and asserts that "nothing prevented defendant from arguing to the trial court that a correct limits-to-limits approach should be used in determining whether Naylin was an underinsured driver." In the end, plaintiff contends, defendant actually disputed an issue beyond the liability of the at-fault driver or the damages due the insured, removing it from the safe harbor.

Whether the trial dispute over Naylin's status as an underinsured motorist removed defendant from the safe harbor is a question of statutory interpretation. *Berger v. Safeco Ins. Co.*, 305 Or App 380, 383-84, 470 P3d 420, *rev den*, 367 Or 290 (2020) (*Berger v. Safeco*). Accordingly, we apply the interpretive methodology set out in *PGE v. Bureau of Labor and Industries*, 317 Or 606, 610-12, 859 P2d 1143 (1993), *as modified in State v. Gaines*, 346 Or 160, 164-73, 206 P3d 1042 (2009). Under that framework, we examine the text of the statute within its statutory context, as well as any helpful legislative history, to ascertain the legislature's intent. *Id.* at 171-72. We begin with the text, as "there is no more persuasive evidence of the intent of the legislature." *Id.* at 171.

ORS 742.061 encourages the timely settlement of insurance claims by granting attorney fees to prevailing plaintiffs in insurance policy actions when the plaintiff's recovery exceeds the defendant's tender. ORS 742.061(1); *Strawn v. Farmers Ins. Co.*, 353 Or 210, 221 n 8, 297 P3d 439 (2013). However, as we explained earlier, ORS 742.061 contains two exceptions, one of which is relevant to actions to recover UIM benefits. ORS 742.061(3). Again, that subsection provides:

> "Subsection (1) of this section does not apply to actions to recover uninsured or underinsured motorist benefits if, in writing, not later than six months from the date proof of loss is filed with the insurer:
>
> "(a)  The insurer has accepted coverage *and the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured*; and

"(b)   The insurer has consented to submit the case to binding arbitration."

ORS 742.061(3) (emphasis added). Here, there is no dispute that defendant invoked ORS 742.061(3) when it sent the safe-harbor letter. However, the parties dispute whether defendant later lost the protection of the safe harbor by its own conduct at trial. This is because, even when an insurer enters the safe harbor by sending a timely safe-harbor letter, it may "cost itself the protection of the safe harbor by acting contrary to its agreement." *Burns v. American Family Mutual Ins.*, 310 Or App 431, 445, 487 P3d 50 (2021). As relevant here, an "insurer may lose the safe harbor if it later injects additional issues beyond those identified in ORS 742.061(3)(a)." *Rice v. State Farm Mutual Automobile Ins. Co.*, 307 Or App 238, 245, 476 P3d 983 (2020), *rev den*, 367 Or 826 (2021).

We have clarified that rule in two main ways. First, we have concluded that an insurer defendant does not leave the safe harbor by arguing the plaintiff's comparative fault, disputing the nature and extent of the plaintiff's injuries, or disputing the reasonableness and necessity of the plaintiff's medical expenses, because those issues are an integral part of the analysis in determining the permissible ORS 742.061(3)(a) issues of the underinsured driver's liability and the plaintiff's damages, respectively. *Spearman v. Progressive Classic Ins. Co.*, 361 Or 584, 600, 396 P3d 885 (2017); *Berger v. Safeco*, 305 Or App at 385. Second, we have clarified that, for an insurer defendant to lose the protections of the safe harbor, the additional, injected issue must be a true "issue" or "a matter of live controversy, active contest, or actual dispute." *Robinson v. Tri-Met*, 277 Or App 60, 72, 370 P3d 864 (2016), *rev den*, 361 Or 886 (2017). In other words, an insurer's mere reference to prohibited issues is insufficient to remove the insurer from the safe harbor if no actual dispute requiring resolution actually develops between the parties. *Id.* at 73.

Upon reviewing the whole of the instant case, we conclude that defendant left the protections of the safe harbor, because it failed to limit the issues before the jury to "the liability of the uninsured or underinsured motorist and the damages due the insured" as required by ORS 742.061(3)(a).

As explained earlier, there is no dispute that defendant properly invoked the safe harbor when it sent plaintiff a timely writing that accepted coverage, agreed to limit the disputed issues to Naylin's liability and plaintiff's damages, and consented to binding arbitration. The parties' pleadings were consistent with that letter and framed the case as a fight over plaintiff's damages. Likewise, the trial began with "the damages due the insured" as the only issue in dispute. Had that posture continued, ORS 742.061(3) would have applied. However, defendant's refusal to stipulate that Naylin was underinsured turned that additional issue into "a matter of live controversy, active contest, or actual dispute." *Robinson*, 277 Or App at 72. And, Naylin's status as underinsured was a preliminary coverage issue that was unrelated to either Naylin's liability or plaintiff's damages, making it a true separate issue beyond those identified in ORS 742.061(3)(a).

We understand defendant to argue that it was plaintiff, not defendant, who was responsible for raising the prohibited issue of whether Naylin was underinsured, at least in part by arguing that Naylin was "underinsured" if his liability coverage was less than plaintiff's damages. However, we do not find that argument to provide a basis for concluding that defendant remained within the ORS 742.061(3) safe harbor. In short, defendant conflates plaintiff's erroneous legal theory with the separate concept of contesting an issue. We agree that the record supports the conclusion that plaintiff proceeded, perhaps from the beginning of the litigation and the filing of her original complaint, on an incorrect belief that an "underinsured motorist" was a driver whose insurance coverage was less than the insured's damages. That misunderstanding appears to have been shared by the trial court *and defense counsel*; at the very least, no one else involved in the litigation ever challenged that definition or proposed an alternative one. Regardless, the fact that plaintiff litigated her case with a misunderstanding of the relevant law never placed an issue outside of Naylin's liability or plaintiff's damages in "live controversy, active contest, or actual dispute," *Robinson*, 277 Or App at 72, for the simple reason that an actual dispute is a disagreement between the parties requiring resolution, and that could not arise until or unless defendant disagreed with plaintiff on

some point. *Id.* ("an 'issue' is a matter that is asserted by one party, is contravened by another party, and requires resolution"). As explained earlier, until the jury instruction phase, the parties only disputed whether the collision with Naylin caused plaintiff injuries, and, therefore, damages. At the jury instruction phase, however, an issue outside of Naylin's liability and plaintiff's damages came into actual dispute, and that arose because defendant refused to stipulate that Naylin was underinsured.

Defendant contends that plaintiff forced its refusal to stipulate that Naylin was underinsured by offering the incorrect "underinsured motorist" instruction, because defendant's stipulation in light of that incorrect definition would admit that plaintiff's damages were greater than Naylin's policy limit of $50,000, contrary to defendant's position that plaintiff had *no* damages. Although we do not deny that that background may provide an *explanation* for defendant's refusal to stipulate, the end result of the refusal was that defendant contested a non-safe-harbor issue. As plaintiff correctly contends, defendant could have responded to the proposed instructions in a fashion that continued to limit the contested issues: by objecting to the incorrect "underinsured motorist" definition and offering a correct one, or, alternatively, by proposing that the jury did not need to be instructed on the definition of an "underinsured motorist" at all because that preliminary issue was for the court to determine by comparing Naylin's and plaintiff's coverage limits. Instead, defense counsel refused to stipulate that Naylin was underinsured, at the same time that he asserted, multiple times, that he did "not have any problem with" the incorrect "underinsured motorist" instruction and was only "concern[ed]" with it when it was "read in context with" the proposed stipulation. In light of the alternative strategies available to defendant that could have kept it within the safe harbor, we do not agree that defendant was "dragged" out of the safe harbor "unwillingly," or that defendant had no other option but to refuse to stipulate that Naylin was underinsured.

In conclusion, defendant left the ORS 742.061(3) safe harbor when, at the jury instruction phase of the trial, it created an actual dispute regarding a preliminary coverage

issue, and, as a result, the issues before the jury were not limited to "the liability of the uninsured or underinsured motorist and the damages due the insured" as required under ORS 742.061(3)(a). Thus, the trial court did not err in adopting the referee's opinion and order that determined that plaintiff was entitled to attorney fees under ORS 742.061(1).[5]

Next, we turn to defendant's third assignment of error, that the referee erred in awarding plaintiff attorney fees incurred after remand. Defendant contends that, because it conceded that Naylin was underinsured during the arbitration proceedings on remand, it "re-entered" the safe harbor as to that portion of the proceedings and should not be liable for any of plaintiff's fees incurred during that period. Plaintiff responds that "[a]n insurer cannot step out and then step back into the safe-harbor exemption, especially in order to limit the amount of plaintiff's attorney-fee award." We review the trial court's ruling awarding plaintiff fees for the portion of the proceedings following remand for legal error. *Berger v. State Farm*, 290 Or App at 486.

We consider the case law that defendant claims supports its position. In *Berger v. Safeco*, we considered whether an insurer's denials, first in its answer and then in a discovery response, actually disputed non-safe-harbor issues. 305 Or App at 385-86. First, paragraph 5 of the plaintiff's complaint alleged that the accident "was caused by an underinsured" motorist. *Id.* at 385. The defendant's answer admitted that the other driver involved in the accident had insurance, "which may or may not have included liability [i]nsurance," but asserted that it lacked "knowledge as to admit or deny the rest and remainder of paragraph 5 [and] therefore, denies." *Id.* at 385-86. Later, in response to a request for admissions, the defendant also denied that it had "consented to the settlement of Plaintiff's claim against the tortfeasor." *Id.* at 386. The plaintiff argued that both denials raised coverage disputes outside of the safe harbor. *Id.*

---

[5] Because we conclude that defendant's conduct at trial removed the case from the ORS 742.061(3) attorney fee safe harbor, we need not consider plaintiff's alternative argument, that the referee's attorney fee award was "right for the wrong reason" because defendant later opposed plaintiff's efforts to arbitrate the case on remand. We state no opinion on the merits of that argument.

We rejected those arguments, concluding that the record as a whole reflected that the defendant never actually disputed any non-safe-harbor issue. *Id.* at 386-87. As to the answer denial, the defendant admitted that the driver was underinsured in response to plaintiff's first request for admissions. *Id.* at 387. Similarly, the issue of the defendant's consent to settle was never discussed outside of that single discovery response, let alone disputed. *Id.* Our analysis in *Berger v. Safeco* is consistent with other cases where we have concluded that a non-safe-harbor issue must be actually disputed for a defendant to leave the safe harbor. *See Berger v. State Farm*, 290 Or App at 492-94 (insurer's answer (which did not explicitly admit that an uninsured motorist had caused the accident) and affirmative defenses (that plaintiff's damages were subject to policy limitations and that plaintiff's breach of contract claim should be dismissed for failure to state a claim) did not raise any actual dispute regarding a non-safe-harbor issue); *Robinson*, 277 Or App at 72-73 ("Nothing in the text of ORS 742.061(3) necessarily implies that, after sending a 'safe harbor letter,' an insurer is automatically or forever disqualified from the fee exemption because an insurer made reference to an uncontested provision[.]"); *Kiryuta v. Country Preferred Ins. Co.*, 273 Or App 469, 475 n 1, 359 P3d 480 (2015), *aff'd*, 360 Or 1, 376 P3d 284 (2016) ("[W]e also do not foreclose the possibility that a defendant that files an answer seemingly raising issues outside of the safe-harbor provision could retain safe-harbor protection by amending its pleadings in a timely way or otherwise demonstrating that only the issues of liability and damages are in dispute so as to conform them to the requirements of ORS 742.061(3).").

We do not find any support in those cases for defendant's proposition that an insurer could leave the safe harbor at trial by contesting a prohibited issue, then "regain the exemption by abandoning the issue later in the proceedings" on remand. All the above cases illustrate what could be called the "actual dispute" principle: The court must look to the whole of the case to determine whether there was an actual dispute over a non-safe-harbor issue. If the court concludes that there was no actual dispute, the insurer retains

the protections of the safe harbor. That is not the same as what defendant contends—that an insurer could move in and out of the safe harbor by actually contesting a prohibited issue at trial before taking the opposite approach on remand. We have already concluded that defendant actually disputed a non-safe-harbor issue, thereby removing it from the safe harbor.

Further, defendant's argument ultimately reduces to an issue of statutory interpretation that the plain text and context of ORS 742.061 do not support. As relevant here, either subsection (1) or subsection (3) is applicable to a given "action," and although neither the statute nor chapter define that term, we have generally understood it to have "the same meaning as the term 'case,'" meaning "a discrete judicial proceeding involving a demand for relief that must be independently commenced and adjudicated." *Abbott v. Baldwin*, 178 Or App 289, 298, 36 P3d 516 (2001), *rev den*, 334 Or 75, *cert den*, 537 US 901 (2002); *see also Webster's Third New Int'l Dictionary* 21 (unabridged ed 2002) (an "action" is a "deliberative or authorized proceeding," meaning a legal or judicial "proceeding by which one demands or enforces one's right in a court of justice" or seeks "the enforcement or protection of a right [or] the redress or prevention of a wrong"). A separate "action" is not created when a case is reargued following a reversal and remand on appeal; instead, those proceedings are merely a continuation of the same action. And here, when ORS 742.061(3) requires that "the only issues are the liability of the uninsured or underinsured motorist and the damages due the insured," that requirement applies to the entire "action." Simply put, an action as a whole is either within the safe harbor or not, and here it is not. As a result, we reject defendant's third assignment of error, and conclude that the trial court did not err in adopting the referee's opinion and order and awarding plaintiff attorney fees incurred on remand.

Finally, we turn to defendant's second assignment of error, that the referee erred in awarding plaintiff attorney fees "based on the hours her attorneys spent on the case, even though they had already received a fee based on a percentage of her recovery."

We briefly recount the relevant procedural history. Plaintiff and her trial attorneys had a fee agreement that provided, in part, that the attorneys would receive 40 percent of any recovery at trial, as well as any statutory attorney fees that the court awarded. As a result, plaintiff's attorneys were already entitled to 40 percent of plaintiff's $350,000 recovery, or $140,000.[6]

After the referee concluded that plaintiff was entitled to a fee award pursuant to ORS 742.061(1), it turned to a consideration of plaintiff's fee petition, which sought over $1 million in fees based on a lodestar calculation. Defendant objected that a lodestar award was "inherently unreasonable" because plaintiff's attorneys had already received $140,000 pursuant to their contingency-fee agreement. In support of that argument, defendant presented the testimony of an expert who opined that it was not reasonable to award a lodestar-based fee where an attorney had already received a percentage-of-recovery fee. Defendant proposed that the court take into account the fee that plaintiff's trial attorneys had already received, and award them, at most, $70,000.[7] Plaintiff presented the testimony of an expert who did not express an opinion on whether a lodestar fee award was reasonable under the circumstances, but who did testify that he had seen "this type of agreement, where the lawyer takes a percentage of the recovery and *** if there are fees awarded, the lawyer gets the fees," and believed it was "between lawyer and client" and had "nothing to do with the determination of an appropriate fee in this case."

The referee considered the parties' arguments and the statutory factors in ORS 20.075,[8] and plaintiff was ultimately awarded a $695,605.25 lodestar fee. As relevant here, the referee concluded that it was not "inherently

---

[6] Plaintiff's $400,000 in damages resulted in a $350,000 judgment against defendant after $50,000 was subtracted from the arbitration award to account for the amount Naylin's insurer had already paid plaintiff.

[7] That amount represented a "0.5 multiplier" applied to the attorneys' percent-of-fund contingency fee.

[8] ORS 20.075 outlines numerous factors that the court must consider in setting a reasonable fee, such as the time and labor required in the proceeding and the results obtained. ORS 20.075 was amended after the relevant events in this case. *See* Or Law 2021, ch 325, § 1. However, that amendment does not affect our analysis and we cite to the current version of the statute.

unreasonable" for plaintiff's attorneys "to receive attorney fees under the contingency-fee agreement as well as attorney fees calculated under the lodestar method."

On appeal, defendant contends that it is not reasonable in this "locale to award the insured's attorneys a lodestar-based fee *on top of* the percentage-of-recovery fee they already received," and that a reasonable award would have been the amount the attorneys "agreed to charge when they took on the case," or 40 percent of plaintiff's recovery—$140,000. (Emphasis in original.) In its reply brief, defendant further contends that it was not proper for the court to award an additional hourly fee because "awarding them that amount *on top of* the amount they had already collected out of plaintiff's recovery necessarily resulted in a total fee that was more than reasonable." (Emphasis in original.)

We pause here to state our understanding of both what defendant is, and is not, contending. Defendant is not contending that the referee, when calculating the statutory attorney fee award pursuant to ORS 742.061(1), should have used a percentage-of-recovery method to determine the *separate* statutory fee award *payable by defendant*. Rather, we understand defendant to contend that, because plaintiff and her attorneys agreed that the attorneys' fee would be *paid out of plaintiff's recovery* as a percentage of that recovery, it was unreasonable to award any additional fee "on top of the percentage-of-recovery fee [the attorneys had] already received." In other words, defendant contends that it is ultimately responsible for *no* statutory fee award in this case because plaintiff's attorneys have "already" been reasonably compensated by plaintiff, albeit in a manner that was entirely derived from and reduced *plaintiff's* recovery.

We flatly reject defendant's argument. First, it is not within the court's discretion to decide *whether* to award a fee pursuant to ORS 742.061(1); instead, the statute directs that "a reasonable amount to be fixed by the court as attorney fees *shall* be taxed as part of the costs of the action and any appeal thereon." (Emphasis added.) Second, it would wholly defeat the purpose of the statute if the mere existence of a certain contingent fee agreement between

the prevailing plaintiff and her attorney could be grounds to excuse an insurer defendant from any responsibility for statutory attorney fees. *See Haynes v. Tri-County Metro.*, 337 Or 659, 666, 103 P3d 101 (2004) (ORS 742.061(1) "expedite[s] the processing of claims and reduce[s] litigation by providing an incentive for efficient claim resolution"); *Heis v. Allstate Insurance Co.*, 248 Or 636, 643-44, 436 P2d 550 (1968) (the predecessor to ORS 742.061(1) was intended "to encourage the settlement of claims and to discourage the unreasonable rejection of claims by insurers"). Defendant's argument, if accepted, would necessarily result in defendant insurers avoiding *any* risk of separate liability for attorney fees owed under ORS 742.061(1) whenever the plaintiff's fee agreement entitled her attorney to both contingent and court-awarded fees. Defendant seeks to essentially shift its responsibility for the attorney's fee back to plaintiff, to be paid entirely out of plaintiff's recovery. We do not see how plaintiff's fee agreement with her attorneys renders the referee's lodestar award inherently unreasonable, and defendant cites no law that supports its point.

A court has the discretion to determine what amounts to a reasonable fee by considering the factors in ORS 20.075(1) and (2). ORS 20.075(3) (providing that "the decision of the court as to the amount of the award" is reviewed for "abuse of discretion"). Here, the referee did so, and the evidence presented supported that determination.[9] We will only set aside an attorney fee award if we conclude that the determination is not supported by substantial, competent evidence. *Stumpf v. Continental Casualty Co.*, 102 Or App 302, 314, 794 P2d 1228 (1990). We see no basis on this record to conclude that such circumstances are present here, and we therefore conclude that the court did not err in adopting the referee's lodestar-based fee award in this case.[10]

---

[9] We therefore reject defendant's contention that there was insufficient evidence to support the referee's attorney fee award.

[10] We note briefly that, in rejecting defendant's argument, we need not consider whether a fee agreement that entitles a plaintiff's attorney to both a contingent fee out of the plaintiff's recovery *and* a statutory fee award taxed against the defendant could ever result in a clearly excessive fee *as between the attorney and the client*. That is a separate issue not before us. Here, the referee was tasked with determining whether the statutory attorney fee plaintiff sought, pursuant

In conclusion, the court did not err in adopting the referee's opinion and order that concluded that plaintiff was entitled to her attorney fees under ORS 742.061(1). Likewise, it did not err in awarding fees accrued following remand, or in awarding a fee based on the lodestar calculation.

Affirmed.

---

to ORS 742.061(1) and taxed against defendant, was reasonable in light of the factors delineated in ORS 20.075(1) and (2). The referee considered those factors in light of the evidence and awarded a reasonable statutory attorney fee.